DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

JUNE TERM, 1886.

---

THE MAYOR AND COMMON COUNCIL OF THE CITY OF NEW BRUNSWICK v. JOHN FITZGERALD ET AL.

1. A statute regulating the police departments in all the cities of the state is a general law and is constitutional.

2. A statute declaring that no policeman in any city of the state shall be removed except for cause and after hearing, is general and constitutional.

---

On error to the Supreme Court. For opinion of the Supreme Court, see 18 *Vroom* 479.

For the plaintiffs in error, *J. Kearny Rice.*

### I. *Mode of Appointment.*

In the case of *Haight* v. *Love*, 10 *Vroom* 14, 476, it was held that the appointment of a city officer may be by motion. The same doctrine was held by Scudder, J., in *McDermott*

457

v. *Miller*, 16 *Vroom* 255, in relation to a charter similar to ours. In this respect (Hoboken) Scudder, J., said, on page 256: "An election is usually ordered by motion, and is made by ballot or *viva voce*, not by ordinance or resolution." See, also, *Trowbridge* v. *Newark*, 11 *Vroom* 131.

The appointments in this case were made under these decisions.

### II. Commencement of Term of Office.

The commencement of the official term of the new appointees began to run from the date of their appointment, which was on the 6th day of July, 1885. All were sworn into office on the 6th and 7th days of July, before nine o'clock in the morning of the 7th day of July, at which hour they were actually on duty under the direction of the mayor and police committee. See *United States* v. *Bradley*, 10 *Pet.* 364. Case of a paymaster. The appointment complete, when made by the president and confirmed by the senate.

The charter of New Brunswick, (*Pamph. L.* 1863, *p.* 359, § 24,) provides that persons "appointed to city offices shall take oath before the city clerk before entering upon the duties of their office." That is all the legislation on the subject.

The Court of Errors and Appeals held, in *Haight* v. *Love*, 10 *Vroom* 478, that "when no time is fixed by law for the commencement of an official term, it begins to run from the date of the appointment."

When this case was before the Supreme Court, (see 10 *Vroom* 14,) it was held that "when the commencement of an official term is not otherwise fixed by law, the term begins as soon as the appointee is authorized by his own action to legally assume the duties of his office, and not merely when he actually enters upon the office."

Therefore *certiorari* will not lie. *Quo warranto* is the only remedy.

The new appointees were actually in office and doing duty under the directions of the mayor and police committee, and their official term had actually commenced.

In the case of *Henry* v. *City of Camden*, 13 *Vroom* 337,

Scudder, J., said "that if it is the object of the relator * * * to try the legality of the election of the present incumbent, and to unseat him, he should proceed by *quo warranto.*"

So in this case, if they want to try the legality of the appointment of the new appointees, and to unseat them, they must proceed by *quo warranto*, so that the question of these men's title to office may be raised in direct proceedings.

The right of a party to an office, can only be called in question by proceedings in *quo warranto*. *High on Ex. Rem.*, § 497 ; *State* v. *Freeholders of Camden*, 6 *Vroom* 217 ; *State, ex rel. Mitchell*, v. *Tolan*, 4 *Vroom* 202 ; 2 *Dill. Mun. Corp.*, § 892.

On *certiorari* to review a tax the court will not look into the validity of the title to office of those holding membership in the taxing body under a colorable appointment. *State, Hoey, pros.*, v. *Collector of Ocean*, 10 *Vroom* 75 ; *affirmed*, 10 *Vroom* 503. *Bradshaw* v. *Camden*, 10 *Vroom* 417, also holds title can only be tried by *quo warranto*.

But in the Bradshaw case the facts were different from what they are here. In that case, Bender, the new appointee, had not taken possession or entered on the duties of the office, and in that case Van Syckel, J., expressly said "that if the title of a claimant in possession of the office was to be tried, it would be necessary to resort to a *quo warranto*."

In this case the office has in fact been declared vacant in the manner prescribed by the charter and ordinances, and new men appointed to office who have qualified and are actually in possession.

Christian, J., in *Bland and Giles County Case*, 33 *Gratt.* 458, said : "An office is terminated *proprio vigore*, by resignation, expiration of term and removal by competent authority."

The term had expired when the office was declared vacant, and they were removed by competent authority.

The declaring vacant is the ouster of the old force, and the appointment, qualification, and acting as such officers, is the possession of the new force.

The case of *Trowbridge* v. *Newark*, 17 *Vroom* 140, is not an authority against us.

First, it does not appear that Trowbridge ever did duty. He simply reported for duty.

In this case the new police force actually did duty under the direction of the mayor and police committee, their superior officers, until restrained by the court.

Second, the question of *quo warranto* was not raised or passed on in the Trowbridge case.

### III. *Charter Provisions Not Repealed by This Act.*

The prosecutors' claim to hold the office, by their affidavit, is in accordance with the provisions of the charter of this city.

The new appointees were appointed under the charter, and if the charter is not repealed there can be no question as to the right of the new appointees to hold their office and title.

The charter of New Brunswick, (*Pamph. L.* 1863, *p.* 352, § 21,) provides "that the common council shall, from time to time, appoint  *  *  *  a chief of police.  *  *  * Every person who shall be appointed to any office under the provisions of this act  *  *  *  shall continue in office until the office for which he shall have been appointed shall be declared vacant," &c.

And section 31 of the same laws (the charter) provides " that the common council shall have power within the said city to make, establish, publish and modify, amend or repeal ordinances, rules, regulations and by-laws for the following purposes:  *  *  *  XXVIII. To establish, regulate and control a day and night police, and to regulate and to define the manner of their appointment and removal, their duties and their compensation."

Unless this charter is repealed, the power of removal of both the chief and the patrolmen is in common council, and may be exercised whenever and for whatever cause they see fit.

If this law is good, common council never can reduce the police force in certain cities, and it takes from common coun-

cil the power to regulate the force as prescribed by charter. No power to diminish the force would therefore exist.

It will be seen that the chief of police and his tenure of office is provided for by the charter, and as to the patrolmen, the charter leaves their tenure of office to be fixed by council —by ordinance, rule or regulation.

The law of 1885 does not apply to the chief of police—it does not name him—only the officers and men in police department—captains and sergeants and men.

The ordinance now in force, and which is found on page 129 of printed book of ordinances, and passed in 1870, provides, in section 2, that "every person appointed under the provisions of that ordinance shall continue in office until the office for which he shall have been appointed shall be declared vacant," &c.

Again, in no view of the case, if the charter and ordinances are still in force, even if the act of March 25th, 1885, applies to New Brunswick, can there be any question as to the right and title to, office of the patrolmen recently appointed; for, by the ordinance of March 29th, 1869, (printed book of ordinances, page 122,) it is provided that " common council may, from time to time, increase the number of policemen, if in their opinion it be for the interest or necessity of the city to do so."

Under this ordinance, the force was increased several years ago, and the old force held, when in office, their title under the increase provided for in this ordinance.

And it will be observed that the motion appointing the new patrolmen simply named the men, and continued that they " be and are hereby elected patrolmen."

The act of March 25th, 1885, (*Pamph. L., ch.* 128,) does not repeal the provisions of the charter of this city.

The case of *State* v. *Clark,* 1 *Dutcher* 55, is the leading case on this subject. Chief Justice Green said: " But irrespective of the dates of the respective laws, the general law cannot prevail within the corporate limits of the city. The charter of the city confers upon its inhabitants the special

franchise of making its own laws in regard to the opening of streets within its territorial limits. So far as it extends it is a grant of sovereignty, a delegation of a part of the sovereign power of making laws. It is, in its essential character, exclusive. Doubtless the legislature may, at its pleasure, revoke the power or extend the operation of general laws, by express terms, over the city; but until that is done, while the power of legislation upon a given subject remains in the city government, and is exercised in accordance with the charter, these laws must prevail to the exclusion of the general laws of the state, where they are inconsistent or repugnant.

" The well-settled rule of construction where contrary laws come in question is that the law general must yield to the law special." *Noy Max.* 19.

The principle has been repeatedly recognized in this court. In *State* v. *Branin*, 3 *Zab.* 485, it was expressly decided that a general statute repealing all acts contrary to its provisions would not repeal the ordinances in any municipal corporation upon the same subject matter, and that the power of assessing and collecting taxes, in such mode as the common council shall by ordinance direct, confers upon the council exclusive jurisdiction over the whole subject of taxation for city purposes. This case (Clark case) was under the Road act.

The same principle is also found in Newark police cases— April 13th, 1885. Supreme Court. *State* v. *Mills*, 5 *Vroom* 180; *Henry* v. *Camden*, 13 *Vroom* 336; *Cross* v. *Morristown*, 3 *C. E. Green* 305; *State* v. *Morristown*, 4 *Vroom* 63.

In *State* v. *Trenton*, 7 *Vroom* 201, Van Syckel, J., said: " The city charter having conferred upon the corporation power to regulate and lay out streets, the general road law will not apply to this case. General legislation will not change or repeal by implication the powers conferred on particular municipalities; such repeal must be by express words."

And since the new constitution went into effect, and since the legislature were prohibited from passing special laws regulating the internal affairs of cities, &c., the Supreme Court has held, in case of *Sheridan* v. *Stephenson*, (Scudder, J.,)

15 *Vroom* 373, that " a general statute, repealing all acts or parts of acts contrary to its provisions, will not be held to repeal a clause in any municipal corporation, on the same subject matter. This has been the language of our courts since *State* v. *Branin*, 3 *Zab.* 484. * * * Within the rules so well defined and understood this general statute will not be held to change the time of payment in the charter of the city of Elizabeth, from October 22d to December 22d."

In that case (Sheridan case) the charter provided for the payment of certain moneys to the collector on or before the 22d day of October in each year, and the question was whether that act was repealed by the general law as set forth in the opinion of the court, so as to make the day of payment the 22d day of December in each year; and the court held that the provisions of the charter were not repealed. This case was recognized and cited in *Hetfield* v. *Plainfield*, 17 *Vroom* 119.

## *IV. Act Does Not Apply to New Brunswick, &c.*

This law does not apply to New Brunswick. We have no police department or employees in police department. We have simply a day and night police force. We have no board who may employ people, clerks and other employees. Police are not, in that sense, employees. The act, in speaking of employees, looks more to the relation of master and servant, employer and employee. In New Brunswick, the police are appointed to office and hold title to office the same as the aldermen themselves. This act evidently applies and was evidently drawn to meet places like Jersey City, where the police department is a created body by the charter, separate and distinct from the aldermen, and has charge of a number of matters in addition to police proper, and which comes under the head of police department, to wit, such as city prison, public almshouses and hospitals, &c., within such city, and to employ such persons as may be necessary for the proper carrying on of the business of said department. These persons are therefore employees of the police department of such

city, for all these subdivisions come, in such city, under the head of the police department. But the charter of New Brunswick simply provides for the establishment of a police force, patrolmen, and that by the common council. There is no department of police that employs anybody.

Since it was held, in *State* v. *Plainfield Fire Department*, 12 *Vroom* 343, that such employees might be removed at pleasure, the present act was passed.

The fifth section of the act refers to the first section, and is to be construed in connection therewith, and refers to the removals spoken of in the first section, and simply gives a mode of procedure to be followed in making those removals.

As to age, referred to in the fourth section of the act, that would not apply to any of the appointees except Fouratt, who was on the force, and had been prior to the passage of the act in question.

And here I might speak of the health ordinance offered by prosecutors. That is simply directory matter, and whether complied with or not does not affect the power of the common council to make appointments to or removals from office. There is nothing in the ordinance stating that if the certificates, &c., are not filed, no appointments shall be made. In the case at bar the certificates of the new appointees were filed.

## V. *Constitutional Question.*

The Police act of March 25th, 1885, is not a general law, applying to all cities, towns, villages, boroughs and townships in this state having police officers, but it applies to no other part of the state but cities, and then only to certain kinds of cities having certain kinds of police regulations established therein. In other words, it probably applies to four or five cities, if in fact it does apply to any city outside of Jersey City. It does not apply, according to its first section, to those cities " where, by statute, the term of office of any such officer and employee is determined and fixed, and does not depend upon the pleasure of any municipal officer, officers or board authorized to make appointment or employment in said department."

It is, therefore, a local or special act, because applying particularly and only to these certain and exceptional localities. The mere name " cities of the state " in the said act, as said by another in speaking of this subject, cannot take from it its arbitrary character of classification and make it a law governing a class of places having reference to the subject matter of said act, and prevent the fact that the towns, villages, boroughs and townships of this state have an equal reference to the subject matter of said act. But the act refers to cities, and certain cities only, and excludes all other of these localities naturally related thereto.

The designation " cities " in the act in question is in itself specific and special, the term " cities " having been held in *Van Riper* v. *Parsons*, 11 *Vroom* 1, and *Pell* v. *Newark*, 11 *Vroom* 550, to be a species of the genus " towns," as found in the constitutional provision. But while it is perfectly plausible and logical to reason that an act specifying a generic term includes and has reference to the specifics of this generic, it is illogical and absurd to suppose for a moment that an act which particularly designates a part has any reference, direct or indirect to the whole. That which affects the whole must of necessity affect each and every part; but, on the other hand, that which affects and relates to a part of the whole, which it is very particular to designate, cannot be construed to affect the whole of which it is a part. Unquestionably, the term " towns," being generic, includes the specific term " cities," but on no grounds can the specific term " cities " be said to include the generic term " towns " or any other specifics included under the generic " towns," *i. e.*, towns, villages, boroughs and townships.

Dixon, J., held, in *Banta* v. *Richards*, 13 *Vroom* 498, that in construing legislation enacted under the constitutional amendment, the term " town " was to be taken in its narrow sense, and was held not to include " township." The same reasoning applies here.

The following is a partial list of places which are not cities and yet have police forces under charter laws the same as

those of New Brunswick, to wit, " to establish, regulate and control a day and night police, and to define the manner of their appointment and removal, their duties and compensation:" Morristown, *Pamph. L.* 1866, *p.* 430, § 4; Hightstown, *Pamph. L.* 1871, *p.* 780, § 4; Chambersburg, *Pamph. L.* 1872, *p.* 1047–1050, §§ 8, 12; Dover, *Pamph. L.* 1869, *p.* 1169, *ch.* 19, § 13; Town of Harrison, *Pamph. L.* 1873, *p.* 274, *ch.* 28, § 22; Hackettstown, *Pamph. L.* 1853, *p.* 348, § 8; Frenchtown, *Pamph. L.* 1867, *p.* 661, § 10; Clinton, *Pamph. L.* 1865, *p.* 782, § 8; Boonton, *Pamph. L.* 1872, *p.* 808, *ch.* 18, § 7; Phillipsburg, *Pamph. L.* 1861, *p.* 212, § 8; Princeton, *Pamph. L.* 1873, *p.* 577, *ch.* 18, § 27; Washington, *Pamph. L.* 1869, *p.* 79, § 89; Town of Union, *Pamph. L.* 1874, *p.* 659, § 24.

Belvidere, *Pamph. L.* 1860, *p.* 396, § 2, provides in this town for appointment of police called high constable and assistants, terms of office at pleasure of common council.

And also places organized under the acts for the formation of borough governments under *Pamph. L.* 1878, *p.* 237, § 13, such as Cape May Point and other places of that character.

In *Hightstown* v. *Glenn*, 18 *Vroom* 105, is found, we think, a very strong decision in our favor. In that case Van Syckel, J., said : " Thus it appears that the Classification acts of 1882 and 1883 are not general in their operation even upon the basis of population. Legislation under this classification will not apply to certain municipal corporations incorporated as cities which would apply to them if incorporated as boroughs or villages. The mere change of name from city to borough will take them out of the operation of one class of legislation and subject them to the operation of another and different class." Apply, then, this principle of law to the case at bar. The change in the name of a municipal corporation from city to town or borough will take that corporation out of the operation of the act in question, and the change in the name of a municipal corporation from borough or town to city will place such corporation under the operation of this act. Surely such

a law cannot be constitutional. It is all in the name and is regardless of the subject matter operated upon.

This act is entirely lacking in characteristics which serve to classify, for the same charter characteristics in relation to police departments are in both cities and towns, and how a law can be general, and not local and special, that fails to operate in one municipal corporation, which has precisely the same characteristics as another municipal corporation which the act does operate upon, the only difference between the two being in the name, I fail to see.

Chief Justice Beasley in *State* v. *Hammer*, 13 *Vroom* 435, says: "There must be a substantial distinction having a reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation, and the objects or places excluded."

This act in question cannot stand the test. Beasley, C. J., in *Van Riper* v. *Parsons*, 11 *Vroom* 1, said, of such laws as this one in question, that they "do not embrace all the classes to which they are naturally related. They create preferences and establish inequalities. They apply to persons, things or places possessed of certain qualities or situations and exclude from their effect other persons, things or places which "are not dissimilar in these respects"—and the act is, therefore, local and special, and as such unconstitutional.

This act is an attempt to classify or to legislate for certain municipalities, in reference to the tenure of office of officers and men employed in police departments of certain cities. The classification or legislation attempted in this bill is one in violation of the principles laid down in the foregoing and in the hereinafter quoted cases.

By an examination of the provisions of this bill, it appears that it is intended to exercise a new mode of removal of police employees from office, or rather of giving them an unlimited term of office, and to exclude from the operation of this law other cities, and other police forces in these cities, in this state.

It is a false classification, and the subject matter of removal of police from office, in municipalities, is not one that is sub-

ject to classification according to the authorities that I have seen.

The true principle, as Chief Justice Beasley well said in *State* v. *Hammer*, 13 *Vroom* 440, " requires something more than a mere designation by such characteristics as will serve to classify ; for the characteristics which thus serve as the basis of classification must be of such a nature as to mark the objects so designated as particularly requiring exclusive legislation. There must be substantial distinction, having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded."

" The marks of distinction on which the classification is founded must be such in the nature of things as will, in some reasonable degree at least, account for and justify the restriction of the legislation."

We ask, therefore, what in the nature of things will justify the legislation which permits police to hold office in some cities for a definite term, say one year, and in other cities for an uncertain term, to wit—if during good behavior, &c.—for the term of their natural lives ? For this is the effect of this law, if it is valid. In certain cities they hold for the year limited by charter, and in others there is no power, if the law is valid, to remove a man from the police force, provided he behaves himself and conforms to the rules.

The act further creates inequalities in the municipalities; for in some the governing body may reduce, if desirable, the numbers of the police force by not filling vacancies as their terms expire, while in other cities, as they cannot declare the offices vacant, no power exists to reduce the force.

If this law is good, the best office in New Jersey is that of a policeman in certain cities—he is fixed for life.

I respectfully submit that it is difficult to suggest why the mode of appointment and removal should not be the same in all municipalities.

Judge Dixon very pointedly said, in the case of *Anderson* v. *Trenton,* 13 *Vroom* 489: " In the present law, the grouping

of cities is for a special purpose only, to confer on some a power of funding debts not granted to others, and hence, in this respect, the law is special." This, we think, covers the case at bar.

Scudder, J., in *Zeigler* v. *Gaddis*, 15 *Vroom* 365, said: "In brief, there must be a true substantial classification, and not a hidden specification."

In the case of *Hammer* v. *State*, before the Court of Errors, 15 *Vroom* 670, the Chancellor said: "How does the fact that the taxes are assessed by a board of assessors in one or more municipality, constitute such a difference between those municipalities and the others where the taxes are assessed by individual assessors as to warrant the legislature in specially interfering in the affairs of the former to such an extent as it has attempted to do in the legislation under consideration?"

As the act in question, (*Pamph. L.* 1885, *ch.* 128,) affects only certain cities, and as such, regulates their internal affairs, it is in contravention of the constitutional prohibition.

The defendants claim that if the act is held to be unconstitutional, it will affect a great many other acts. I hardly think that this argument can have any weight with the court. The court have never before hesitated in declaring laws unconstitutional when they were so, even though it might affect a number of other acts of similar import, and the court well knew when it pronounced the decision in the Hightstown case, above quoted, that it would affect, very considerably, past legislation.

In *Stilsing* v. *Davis*, 16 *Vroom* 390, the case was entirely different from the one at bar. In that case, to use the language of the court, "the act of 1881 above recited, is, by its express terms, applicable to all the cities of the state, and it embraces every officer of a city whose term is for a precise and determined period," whereas in the case at bar, the act, (*Pamph. L.* 1885, *ch.* 128,) is not applicable by its very terms to all cities of the state, but only to certain cities, and it only embraces one kind of city officer, to wit, a policeman.

As to the argument of counsel, and of the court below, re-

garding the use of the word "city" in opinions heretofore given, it is sufficient to say that in none of those cases was the question raised before or passed upon by the court as to this classification of cities, and my argument is that not having been raised or passed upon then, they are not, neither were they intended to be, authorities upon this particular point.

A careful examination of the opinion given by the court below seems, we think, to bear out the view that in fact the Supreme Court considered the act in question only to apply to some cities, and that the rule, as laid down by the court, could not be regarded as a universal test of generality in legislation, and that it appeared to the court to be a matter of difficulty to recognize the rule announced by them then as a test of generality in legislation.

And we further submit that the act legislates only for one class of police officers, and that is those whose term of office is not for any fixed and definite period of time, for with those officers the removal from office, or the vacating of the office, is simply the determination of their term of office, and the intent of the act being that no removal from office during the term of office should be had, except for just cause, &c. There is, we think, a clear distinction between the determination of the term of office recognized in the act and the removal from office during the continuance of the term of office.

It is respectfully submitted that but one conclusion can be reached by the court in this case, and that is that the act is a local and special one, that its classification is false, that it does not embrace all the objects of the class to which it is related, that it creates preferences, establishes inequalities, and excludes from its operation many places which are substantially similar to the places where it is to take effect.

The judgment of the Supreme Court should be reversed.

For the defendants in error, *Willard P. Voorhees* and *Alan H. Strong*.

This writ of *certiorari* removed into the Supreme Court certain motions or resolutions of the common council of New

Brunswick, passed by that body on July 6th, 1885, removing John Fitzgerald, chief of police, who has been in office since April, 1884, and the patrolmen or policemen of said city.

The prosecutors are the chief of police and one of the patrolmen sought to be removed from office by these resolutions. The Supreme Court reversed the proceedings as being contrary to the act, &c. *Pamph. L.* 1885, *p.* 163.

## I. *Certiorari is the Proper Proceeding.*

The testimony and admissions of counsel in the case below show that these old officers were attempted to be removed without cause, without any charge, in writing or otherwise, being preferred against any of them, of misconduct, incapability, nonresidence or disobedience of rules, and without any opportunity to make defence thereto; such removals being made at the pleasure of the council.

The testimony further shows that the new appointees have never had possession of the office or exercised it; that the old force refused to surrender their office, and have acted since such attempted removal as before.

The only official acts claimed to have been done by the new force are detailed in the testimony of Fouratt, which is summed up in the statement that the new force, after being sworn in, went to the police headquarters and demanded possession of the office and building; that they, being refused by the old force, retired from the headquarters, and by direction of some members of the police committee, attempted to establish police headquarters in the office of the overseer of the poor; that two men were placed on duty in the afternoon, and since that afternoon the new force have done nothing. The old force, however, has continued to act as before.

The police committee has no power to establish headquarters. This must be done by common council. *Charter,* § 31.

Section 2 of the police ordinance provides that the police department shall be under the direct control of the committee on police.

By section 9 of the same ordinance the police committee is authorized to " make and establish rules and regulations for the government and control of the police department. * * * Such rules and regulations shall be duly reported to common council, and when concurred in by them, shall be in full force," &c.

By this ordinance the government and control of the police department is relegated to the police committee, but this control is to be exercised by rules to be reported to and approved by common council before they can take effect. Nothing of this sort has been done.

Nor does it anywhere appear that the police committee, as such, acted in this matter, or that all the committee met or had notice to meet, but the testimony shows that the directions were given by Price and O'Gorman, two of the members of this committee.

The rule as stated in *Townsend* v. *School Trustees*, 12 *Vroom* 312, governing such bodies, is that all must meet or have notice to meet when official action is intended.

No power existing in the committee to establish new headquarters, it is respectfully insisted that two of its members could much less exercise such power.

The placing of two patrolmen upon duty could not oust the whole of the old force, who had never ceased acting.

The new force has since retired from even attempting to act, by their own admission.

All the records of the department, badges, arms and other insignia of office, are in the possession of the old force, who are acting in patrolling the city and keeping the peace thereof, and are recognized as the *de facto* police.

This writ is the proper remedy to test these proceedings of council.

It is so stated in *Bradshaw* v. *Camden*, 10 *Vroom* 417, and was also used in *Trowbridge* v. *Newark*, 17 *Vroom* 140, in which case the new force had also been sworn in.

The question here is not as to the commencement of the official term of the new appointees, but as to the present pos-

session of the office.    If the old force has not been actually and completely ousted, then their remedy is *certiorari*.    See, also, *Haines* v. *Camden Freeholders*, 18 *Vroom* 454.

The writ is not aimed to remove the new appointees, but to test the validity of the attempted removal of the old force. But these facts are not properly before this court.    The writ of error does not remove the depositions taken in the Supreme Court.    *Entries* v. *State*, 18 *Vroom* 140 ; *Gilliland* v. *Rappleyea*, 3 *Green* 138.

· Nor does the joinder in error by the defendants help the plaintiff in error in this regard, since the assignments of error do not purport to be based upon said depositions.

### II.  *The Removals Were Contrary to Law*, (*Pamph. L.* 1885, *ch.* 128, *p.* 163.)

It is respectfully insisted that the common council, in passing the resolution of removal, acted in violation of the provisions of chapter 128 of the laws of 1885, (*Pamph. L., p.* 163,) being an act entitled "An act respecting police departments of cities, and regulating the tenure and terms of office of officers and men employed in said departments."

### III.  *This Act Applies to New Brunswick.*

The charter of New Brunswick (section 21) provides that the police shall hold office during the pleasure of the common council.    This has been passed upon in *Trowbridge* v. *Newark*, 17 *Vroom* 140, in reference to the charter of Newark, where the provision is the same.    New Brunswick, not being within the exception to the act, falls within its provisions.

### IV.  *The Charter is Repealed Pro Tanto by the Act.*

Whelpley, C. J., in *Mechanics' Bank* v. *Bridges*, 1 *Vroom* 112, says : " Whether a general law repeals any of the provisions of a special charter, is a question of legislative intention."

In the case of *Morris and Essex R. R. Co.* v. *Commissioner of Railroad Taxation,* 9 *Vroom* 472, Mr. Justice Van Syckel says (page 476), in reference to "An act to establish just rules for the taxation of railroad corporations," &c.: "The act, by its title, relates exclusively to railroad companies, and by its first section enacts that 'all taxation upon all railroad companies * * * shall be assessed thereunder.' Language cannot be clearer. Every railroad in the state is included, and if any road to which the legislature has power to apply this law can claim that it is not within it, every other road can set up the same exemption, and thus render the law wholly inoperative." *S. C.,* 8 *Vroom* 230; *State, Golding, pros.,* v. *Chambersburg,* 8 *Vroom* 258.

In the case of *Zeigler* v. *Gaddis,* 15 *Vroom* 363, quoted in defendants' brief, it was expressly held that the supplement of 1879, if constitutional, did take from the common council of Lambertville the licensing power. This case was decided on the constitutional question alone.

Inasmuch, therefore, as this act applies to New Brunswick, it must be conceded that the action of common council, in their effort to remove the defendants in error, was in direct violation of law, unless it can be shown that this act is unconstitutional.

*V. The Act, (Pamph. L.* 1885, *ch.* 128,) *is Constitutional.*

1. Plaintiffs in error claim that it is not so, for the reason that it is a special law, regulating the internal affairs of cities.

That it has this effect we do not deny, but we deny that it is special. The purpose of the law is to regulate the manner and causes of removal from office in the police departments of cities. Such removals can now be made only for some of the causes specified in section 1 of the act, and upon written charges and formal hearing, on notice to the persons affected.

Section 5, which contains these provisions, extends to all the cities of the state, and necessarily destroys, wherever it existed in cities, the power to remove police officers or men without cause, and has thus the incidental effect of converting

a tenure during pleasure of the appointing power into a tenure during the good behavior of the incumbent. But there is no change in the term in any city, either as to its duration or as to its character, as being certain or uncertain. Wherever the term was previously for a definite period it still continues so, and wherever, heretofore, it lasted till the office was made vacant, it likewise so continues.

The fact that in some cities the term is fixed and in others it is not fixed, is not the result of this statute, but of the charters of the various cities, which are left untouched in this respect. In the only respect in which this act operates, that is to say, in the power of removal, perfect uniformity is produced, both as to the mode and causes of its exercise. Statutes so operating are valid, though taking effect in but a single locality. *Van Riper* v. *Parsons*, 11 *Vroom* 123 ; *Field* v. *Silo*, 15 *Vroom* 355 ; *Hines* v. *Freeholders of Essex*, 16 *Vroom* 504 ; *Tiger* v. *Morris Common Pleas*, 13 *Vroom* 631 ; *Sutterly.* v. *Camden Common Pleas*, 12 *Vroom* 495 ; *Bumstead* v. *Govern*, 18 *Vroom* 368.

Such being the scope of the act, (as displayed more especially in section 5,) it is altogether a superficial view which holds that the first portion of section 1 renders the whole special and void.

(1) Said portion of section 1 is itself general.

Looking beyond the mere form of expression, it is but a specification of one of the effects of section 5. To say that certain officers shall hold office during good behavior, &c., except where, by statute, the terms are fixed, is simply equivalent to saying that the power to remove such officers at pleasure is abolished. This power of causeless removal is the evil at which this clause is directed, and wherever the power existed it is destroyed. The presence of this power was a characteristic which made a proper class. *Van Riper* v. *Parsons*, 11 *Vroom* 1 ; *State, Richards, pros.*, v. *Hammer*, 13 *Vroom* 435 ; *S. C.*, 15 *Vroom* 667 ; *Skinner* v. *Collector*, 13 *Vroom* 407 ; *Van Riper* v. *North Plainfield*, 14 *Vroom* 349.

It did not exist in cities where the term was fixed by stat-

ute, and hence the exception of such cities does not render the law less extensive than the mischief to be remedied, or render the class defective.     We do not agree with the view expressed by Mr. Justice Reed, in his opinion in this case, that generally speaking, classification must be based upon the physical characteristics of the municipality.

A law is general which has a uniform operation upon some general principle applicable to the subject, or, as it is otherwise expressed, which embraces all of the individuals distinguished by characteristics to which the purpose of the law relates.     These definitions are applied, not merely in cases of laws regulating the internal affairs of cities, but also those increasing or decreasing salaries of officers, (*Skinner* v. *Collector*, 13 *Vroom* 407 ; *Stevenson* v. *Passaic*, 17 *Vroom* 173,) and those for the assessment of taxes, (*Central R. R. Co.* v. *Board of Assessors*, 19 *Vroom* 1,) and doubtless would be adopted for all the species of laws enumerated in the constitution. *Const., art. IV.*, § 7., ¶ 11.

If the subject of the law to be tested is one which is the creature of legislation, we see no reason why the distinctive forms which the legislature has impressed upon it may not serve as a basis of classification for laws properly related to such peculiarities.     There is no need to consider whether such peculiar features could now be created.     We have but to know that they exist.     If so, they are or may be just as essentially characteristic whether they have arisen from the physical necessities of the town, or merely from caprice.     The subject must be dealt with as it is and classified accordingly, and not according to what it would have been if, in years gone by, the legislature had kept in view only the natural or physical differences, and had not indulged the discretion with which it was then constitutionally invested.

The whole subject of the internal affairs of cities, &c., is statutory to a peculiar degree.     That such affairs should exist is a natural or physical necessity.     But the extent and distribution of the powers of the local government, the officers by whom they are exercised, the appointment and terms of these

New Brunswick v. Fitzgerald.

officers and the manner of the discharge of their duties, give opportunity for great variety of detail which we find in the municipal charters and special laws passed prior to 1875, and which has but little if any connection with the physical characteristics of the respective localities. What warrant is there for saying that municipalities cannot be classified for legislation, with respect to these peculiarities, as well as those which depend upon physical characteristics.

The prohibition is against special laws regulating the internal affairs of towns, &c., not against perpetuating special features by general laws. If a given law applies to all places possessing characteristics so connected with the purpose of the law as to reasonably account for its passage, then the law is general, whether the characteristics are inherent in the nature of things, or have arisen from an arbitrary exercise of the legislative power.

The distinction made by Mr. Justice Reed has not been kept in mind in earlier cases. In *Anderson* v. *Trenton*, 13 *Vroom* 486, 488, besides the instances of valid classification cited in the opinion of the court below, Mr. Justice Dixon gives as another a law "providing that in all towns having volunteer fire departments the members of the department should choose a commission to govern them." And in *Hammer* v. *State, ex rel. Richards*, 15 *Vroom* 667, 670, the Chancellor, in giving the opinion of the court, says: "The mere fact that there are some municipalities, some of the internal affairs of which are conducted by means of boards perhaps of the same or like character, while it might warrant separate legislation as to the conduct of those boards, would not warrant separate legislation of so important and radical character as that under consideration."

(2) But if it were possible to hold that this first part of section 1 is special, and therefore void, it could not affect the validity of the remainder of that section and of section 5, each of which, as before shown, covers the whole ground of this first part of section 1.

In short, that part of section 1 down to the semicolon after

the word " departments " is wholly immaterial and mere sur-
plusage. Its existence gives no additional force to the act,
and its rejection cannot impair it.

The point has sometimes arisen, where a statute is partly
good and partly bad, whether the portions are severable, so
that what is constitutional may stand when the rest is dis-
carded. The inquiry always is whether the part rejected was
essential to the legislative purpose as expressed in the remain-
der. But there can be no difficulty on this point where, as
here, the part rejected is simply useless. Neither could any
embarrassment arise from that clause of the constitution which
prohibits the occurrence of any special provision—assuming
this part of section 1 to be such—in a general act. The re-
sult of such a state of things would ordinarily be that the
special clause would be void, and what was general would, if
severable, be valid. This would clearly be the result where
the special provision is void for another reason, as is the case
here if the clause is special, as it regulates the internal affairs
of cities. Being void, it is as if it did not exist.

2. But is the act, though thus general as to cities, special,
as not including towns, boroughs, &c. ?

(1) This question must be considered as at rest in this court.
In *Van Riper* v. *Parsons*, 11 *Vroom* 1, 9, the Chief Justice
lays down the rule that legislation founded on a fair classifi-
cation, and having relation to the characteristics of the class,
will be general and valid, but otherwise if the classification is
merely illusive, and proceeds : "As, for example, a statute de-
claring that all cities containing a population over a certain
number shall have a given number of voting places, and all
cities containing a lesser number shall have a prescribed lesser
number, would be, to my mind, obviously legal, because the
classes of persons thus distinguished from each other would
naturally stand upon a different footing with respect to the
particular subject to which such legislation related."

And again, in *State, Richards, pros.,* v. *Hammer,* 13 *Vroom*
435, 439, from the same high authority : " The question, there-
fore, arises, Is this law of that [special] character ? It does

not profess to be such, for its title is 'An act relating to the assessment and revision of taxes in cities of this state.' But this descriptive generality is immediately dwarfed and curtailed by the initial words of the body of the enactment. [As rendering it applicable to only two cities, on pages 440, 441.] A sample of the other or legitimate kind would be signified in a law that should give to all cities in the state, situate on tidewater, the privilege of using such waters in connection with their sewers. In such an enactment but a part of the cities of the state would be embraced, but the classification would be lawful and proper, inasmuch as the places embraced would be possessed of a characteristic distinct from those possessed by the excluded places, such characteristic being of such a nature as to afford a reasonable ground for such special legislation."

In *State, Anderson, pros.,* v. *Trenton,* 14 *Vroom* 486, 487, Mr. Justice Dixon uses the following language: "Thus cities have been held to be included among towns as here intended, and so, also, are townships said to be. And doubtless a law embracing all cities or all townships would be constitutional; for these bodies, because of their marked peculiarities, are by common consent regarded as distinct forms of municipal government, and so constituting classes by themselves."

In *Green* v. *Hotaling,* 15 *Vroom* 347, effect was given to an act, (*Pamph. L.* 1878, *p.* 344,) for the construction of sewers in adjoining cities, (not including towns, &c.,) Mr. Justice Van Syckel remarking (page 348): "The assessment is authorized by an act passed in the same year, which is a general law, applicable to all adjoining cities and to all assessments for the construction or continuation of sewers which have been or may hereafter be built. * * * The classification is a proper one for the purpose which this legislation has in view. The law applies to the entire class, and could not be made more general in its operation." This case was affirmed, for the reasons given below, in 17 *Vroom* 207.

In the following cases the several acts in relation to assessments in cities, (*Rev., p.* 1355, &c.,) were recognized as valid,

and assessments thereunder sustained: *State, Henderson, pros.,* v. *Jersey City,* 12 *Vroom* 489; *Turrell* v. *Elizabeth,* 14 *Vroom* 272; *Mayor, &c., of Jersey City* v. *Carson,* 14 *Vroom* 664; *Righter* v. *Newark,* 16 *Vroom* 104; *Mayor, &c., of Jersey City* v. *Green,* 13 *Vroom* 627. In the last case the Chief Justice, in giving the opinion of the Court of Errors, said, speaking of the " Further act in relation to assessments in cities," (*Pamph. L.* 1877, *p.* 55; *Rev., p.* 1357, § 6): " The several exceptions to the constitutionality of this law have been carefully considered, and it is deemed sufficient to say that none of them are entitled to prevail."

In *Stilsing* v. *Davis,* 16 *Vroom* 390, an act, (*Pamph. L.,* 1881, *p.* 47,) providing that all officers in cities holding for a definite term should continue to hold till a successor was qualified, was put in force without question, and a judgment rendered for the relator upon the single ground of the effect of this statute. The Chief Justice, in his opinion (page 322), said, as if answering an objection to the want of generality of the act: " The act of 1881, above recited, is, by its express terms, applicable to all the cities of the state, and it embraces every officer of a city whose term is for a precise and determined period."

In each of the cases above cited it was held or assumed that cities constitute a class for separate legislation for all purposes. In all except the first three the question was directly involved, and unless cities constitute such a class the decision in each case must have been directly contrary to what it was.

In *School Trustees* v. *Stocker,* 13 *Vroom* 115, 117, the court said: "A proposition assumed or decided by the court to be true, and which must be so assumed or decided in order to establish another proposition, which expresses the conclusion of the court, is as effectually passed upon and settled in that court as the very matter directly decided." Applying this rule, it must be admitted that the constitutionality of statutes applying only to cities, but general as to them, is settled, not only in the Supreme Court, but in the Court of Errors, and it was so held in *Jelliff* v. *Newark,* 19 *Vroom* 101.

If it is said that there are no peculiar features in the organization of police departments of cities that call for such a law as this, and do not exist in towns and boroughs, we reply that neither are there such peculiar features in the assessments in cities that are not to be found in many towns and boroughs, yet, as has been seen, the laws relating to assessments in cities only have been many times acted upon, and the constitutional objections to them were considered and overruled in the Court of Errors, in *Mayor of Jersey City* v. *Green, supra.*

It is impossible to assert the constitutionality of the acts relating to assessments in cities and at the same time deny that the act in controversy in this case is equally valid. And the same remark applies to the statutes upheld in *Green* v. *Hotaling* and *Stilsing* v. *Davis, supra.*

The legislature, ever sensitive to any indication of its sphere of action from the courts, and under the encouragement of the *dicta* and decisions above cited, at each session since the adoption of the amendments to the constitution, has passed laws upon this theory. Within the last ten years about two hundred statutes, by actual count, have been passed, applicable to cities only, relating to every conceivable feature of municipal government, and probably there are almost as many more, depending on the same distinction and applying to boroughs and towns and other municipalities except cities.

If it should now be held that cities do not constitute a class appropriate for legislation separate from towns, &c., or that there must be, in all laws based on such classification, a traceable connection between the object of the law and some peculiarity distinguishing every city from every town or borough, there is not one of this multitude of enactments that can be sustained, for there is no subject upon which a line can be drawn between cities on the one side and towns and boroughs, &c., on the other, with absolute accuracy of classification on this theory.

The courts have strongly expressed the impolicy of overruling any rule of law that had even once received judicial approval, and under which private rights had been acquired ;

and it has often been said to be of far less importance that the rule should be abstractly or theoretically the best than that it should be stable and not liable to change.   9 *Vroom* 32, 36, 38.   But how infinitely is this consideration strengthened when a principle of legislation is attacked, which has been so often judicially recognized, and the effect of an overruling decision will be, not to abrogate any single rule of private right, but to annul scores and even hundreds of statutes affecting in almost every possible manner the public affairs, finances and securities of every municipality of the state.   *State, Society, &c., pros.,* v. *Paterson,* 13 *Vroom* 615, 618.   See *Pequest Drainage Case,* 12 *Vroom* 175, 179.   The confusion that would result from such a decision in this case would be a public calamity in comparison with which the abstract question of correctness of the classification shrinks into insignificance.

We do not understand the case of *Hightstown* v. *Glenn,* 18 *Vroom* 105, as intimating that cities do not constitute a proper class by themselves.

The classification into cities and boroughs was not presented for decision in that case, being complicated with the further classifications by population, which extended to both cities and boroughs, operating differently in each.   It was the classification by population that was condemned as being vicious in itself and as not operating with uniformity in the places to which it extended.   Evidently it was not the intention of the court in this case to overrule prior adjudications in the Supreme Court and in this court which are not even cited in this case.

We do not understand the opinion of the Chief Justice, in State, Central R. R. Co., pros., *v.* State Board of Assessors, as announcing any new rule in regard to classification; on the contrary, he expressly declares that the rule is completely settled by previous cases.

### VI.  Cities Form a Proper Class.

(2) But if it were to be considered as a new question, we

insist that cities, (meaning thereby the municipalities incorporated by that name), are a class by themselves, distinct from all others, for all purposes of municipal legislation.

Speaking generally, cities are more highly organized and possess greater powers than towns, &c. *Banta* v. *Richards,* 13 *Vroom* 497, 498, and see *Auryansen* v. *Hackensack Improvement Commission,* 16 *Vroom* 113, 116.

The cities include all the great centres of population. A borough, town or village is a country district. A city is always a township by itself, and not within the jurisdiction of any other township ; while towns, boroughs, &c., are always more or less intimately connected with some township in which they lie. Most of the larger cities were originally incorporated as towns, and, upon increasing in importance, have been re-incorporated as cities.

While cities, boroughs and towns approach each other more or less closely in organization, and their incorporation, by the one name or the other, may, in some instances, appear arbitrary, yet there is a distinction in the popular mind, and which has existed historically from the earliest times in this country and in England. An evidence of the strength of this idea is the fact, already noticed, that both the courts and the legislature have to this time unhesitatingly adopted and acted on it.

The necessity for some such classification, not merely for some, but for all purposes of local legislation, is apparent.

It is impossible to govern a great commonwealth like Jersey City by the same local laws as the most insignificant rural settlement. Yet if such a classification as this is not to be supported it will be impossible to adopt any, since none can be suggested that will not, in some instances, seem arbitrary.

The subject is, at best, attended with much difficulty to the law-maker, and care should be taken not to embarrass legislation unnecessarily by too great nicety.

In seizing upon this great historical class as a basis for separate legislation, the legislature is as far as possible from the purpose of evasion evident in the laws which have here-

tofore been adjudged void, and cities are so numerous that laws, general as to them, can never. be attended with the evil consequences of special legislation.    Such a classification should be regarded as exceptional, and be dealt with on a somewhat broader principle than that announced in earlier cases, where it was necessary to prevent the frittering away of the constitutional prohibition by purely artificial and illusive classifications.

Rightly interpreted, the rule established by previous decisions amounts to this: that the legislature cannot arbitrarily create a class of municipalities for the mere purpose of a particular law, or for legislation in general, where such class has no existence in the nature of things or apart from the legislation proposed.

If a new class is to be formed, its characteristics must be chosen with a view to the legislation intended, and must be connected with the purpose of the law.    This is necessary to prevent the endless subdivision which would make each individual a class by itself.    But if the class has immemorially existed, though arbitrarily composed, the legislature may preserve and continue to recognize it.

The requirement that the law should be connected with the distinctive class characteristics has only been applied where it has been sought to subdivide cities, &c., and need only to be observed in the formation of new classes.    *Anderson* v. *Trenton,* 13 *Vroom* 486.

(3) But there is a connection between the object of this law and the characteristics of cities as a class.    Party feeling always runs higher, and hence political removals are more general in cities than in the country districts.

There is more need in cities for the efficiency in the police which is directly promoted by this law.    In cities, the police are more numerous and wield greater power.    There is, therefore, the more reason that the temptation to use the power in controlling elections should be taken away by making continuance in office depend, not on party success, but on good behavior.

(4) But again, the argument of the plaintiffs in error proceeds upon the idea, (which up to this point we have adopted), that the word " cities," as used in this statute, refers to those only that are called such in their charters.

We insist that the term is not necessarily so restricted in meaning.

If the plaintiffs in error are right in the contention that " city " is merely a name that the legislature might just as well have originally bestowed upon the places it chose to incorporate as " boroughs," upon what theory is it that the legislature is now held to be precluded from applying the name to them?

The statute is remedial ; and if, as the plaintiffs in error claim, the same reason for its application exists in boroughs, &c., as in cities, strictly so called, it comes within the influence of many authorities that justify the extension of the act to all municipalities where a police department exists, in which the offices were held at pleasure of the appointing power.

" It is by no means unusual, in construing a statute, to extend the enacting words beyond their natural import and effect, in order to include cases within the same mischief, where the statute is remedial." *Dean of York* v. *Middleburgh,* 2 *Y. & J.* 106 ; *Wilberforce Stat. Law* 235, &c.; *Maxwell on Interp. of Stat.* 209 ; *Hoguet* v. *Wallace,* 4 *Dutcher* 523 ; *Sedgwick Const. and Stat. Con.* (2d ed.) 309.

And if the conclusion is correct which plaintiffs in error draw, that unless so extended the act is unconstitutional, the reason for its extension is immensely strengthened.

A construction will always be adopted, if possible, that will render the act constitutional, whether remedial or not. *Colwell* v. *Mays Landing W. P. Co.,* 4 *C. E. Green* 245 ; *Sedgwick Con. of Stat., &c., Law* 266, 267, note (a); *Lower Chatham Drainage Case,* 6 *Vroom* 497.

This is only an application of the general maxim, *ut res magis valeat quam pereat,* so powerful in all questions of statutory construction, and which, even where the construction

is clear, has found expression in the uniform declaration of the courts that it is only upon a clear and strong conviction that a law can be pronounced unconstitutional, and if a doubt remains upon the subject, the law must be sustained. *Skinner* v. *Collector*, 13 *Vroom* 407, 410.

BEASLEY, CHIEF JUSTICE. By an ordinance enacted by the mayor and common council of the city of New Brunswick, constituting a police department, it was provided that such officers should be appointed by the common council and should hold " their respective offices during good behavior." Subsequently, on the 23d of May, 1870, another ordinance was passed, repealing, in express terms, the foregoing regulation of the tenure of these officials, and declaring, to use its own language, " that every person who shall be appointed to any office under the provisions of the said ordinance shall continue in office until the office for which he shall have been appointed shall have been declared vacant, or until another person shall be appointed to succeed him and shall enter upon the duties of his office."

On the 6th day of July, 1885, the common council of New Brunswick passed a resolution declaring that the offices of chief of police and of the policemen be declared vacant, and proceeded to appoint others in their stead. This removal was not for cause, but was brought about by the mere volition of the council.

The question to be decided is whether such act be legal.

The solution of the inquiry depends altogether on the construction to be given to the statute approved March 25th, 1885, entitled "An act respecting police departments of cities, and regulating the tenure and terms of office of officers and men employed in said departments." That this statute, if it has legal efficacy, did prohibit the act of the city council in question is too plain to admit of discussion.

The contention is that this law is unconstitutional, and it is challenged, in this respect, on two grounds, it being urged, in the first place, that it rests on an incomplete classification, in-

asmuch as its subject is the regulation of police departments, and it is made applicable to cities only, although towns and boroughs are similarly circumstanced, having police departments identically conditioned.

In the Supreme Court, so far as this point was concerned, the subject was disposed of on the ground that this classification had been so repeatedly recognized in judicial decisions and in acts of legislation as not to be open to further discussion, but that it was to be treated as *res adjudicata*. In that view this court entirely concurs.

But in the second place it was insisted that the statute referred to was special, and therefore unconstitutional, in this respect: that it created differences in the terms of office of the police, and in the power to remove them, in the various cities of the state.

It is plain that as these departments of police are common to all cities, any law that affects to regulate them must, by force of our legal system, be a general one. A particular legislative plan, prescribing the official terms of such functionaries or the mode of their supersedure, whether such results be effected by the modification of existing regulations or by the introduction of new ones, applicable to certain cities only, would be clearly illegitimate. The reason of this is that such a law would be based on an imperfect classification, as it has to do with a subject matter that is common to all cities, while its operation is confined to a few of them.

And in my opinion the provision contained in the first clause of section 1 of this act now under consideration falls under the condemnation of this principle. That regulation is in these words, viz.: "That in the several cities of the state, the officers and men employed by municipal authority in the police department of any city shall severally hold their respective offices and continue in their respective employment as such municipal officers and employees during good behavior, efficiency and residence in such city, except where, by statute, the term of office of any such officer and employee is determined and fixed, and does not depend upon the pleasure of

any municipal officer, officers or board authorized to make appointment or employment in said departments."

It will be observed that by this passage variant tenures of office in this branch of the public service are established in the different cities. In some, where the tenure of office has been created for a fixed period by a city ordinance, the tenure is converted into an indefinite holding—that is, during the good behavior of the incumbent; and in others, where the same fixed term of office exists, under similar conditions, by force of a statute, such office-holders are not affected by this legislative regulation, but retain their offices only for the period limited at their appointment. In other words, this clause, by force of the regulation that it introduces, and the exception by which such regulation is limited, has the effect of giving to some cities a police force the members of which would hold office *quam bene se gesserint*, and to other cities a body of policemen who would continue in office only during a fixed period. Such a law is obviously special, as neither of its establishments appertains to all the cities of the state, its defect being that it proceeds on an imperfect classification.

But it is not conceived that the other provisions of this statute are liable to a similar impeachment, and it is such latter provisions that are applicable to the present case.

The second clause of the section, part of which has been quoted above, is as follows, viz.: "No person shall be removed from office or employment in the police department of any city, or from the police force of any city, for political reasons, or for any other cause than incapacity, misconduct, nonresidence or disobedience of just rules and regulations established or which may be established for the police force or police department of such city; provided, that any member of the police force of any city who shall be absent from duty, without just cause, for the term of five days, shall, at the expiration of said five days, cease to be a member of such police force." And section 5 of the act reiterates this declaration, and prescribes the mode in which, for just cause, all removals from office shall be effected.

It will be noted, therefore, that this provision is general : it applies to this entire class of municipalities, and to every policeman, no matter what his tenure of office may be, and whether derived from statute or ordinance. The regulation is also complete and self-sustaining, being in no wise dependent on the preceding clause, and it is therefore severable and capable of separate enforcement. Its effect is this and nothing more : that hereafter no policeman in any city of the state can be removed from office except for misconduct, on cause shown and after trial. No reason is apparent why such an act is not constitutional, and, in a legal point of view, wholly unobjectionable.

The other objections taken in the brief of counsel have been duly considered, but being deemed plainly unsustainable, their discussion seems unnecessary.

The action of the common council, being in contravention of the prohibition of the statute above expounded, was properly nullified by the Supreme Court, and that judgment must be affirmed.

THE CHANCELLOR (dissenting.) By an ordinance of the city of New Brunswick, passed in 1870, it is provided that every person appointed under the provisions of the ordinance to establish and regulate the police department of the city shall continue in office until the office for which he shall have been appointed shall be declared vacant, or until another person shall be appointed to succeed him and shall enter upon the duties of his office. On the 6th of July, 1885, the common council, by the vote of a majority, declared the offices of chief of police and of patrolmen of the city vacant, and then, by like vote, appointed other persons to the offices thus declared vacant. The validity of their action in these matters was called in question by proceedings in *certiorari* in the Supreme Court, which resulted in a judgment declaring the action invalid. The ground upon which the judgment was based is that the common council was, by the act entitled "An act respecting police departments of cities, and regulating

the tenure and terms of officers and men employed in said departments," which was approved March 25th, 1885, (*Pamph. L., p.* 163,) deprived of the power which it, up to that time, had, so to remove those officers. The removals were made merely at the will of the majority of the members of the common council, and not upon any charges against the officers. The writ of error brings before this court the question of the constitutionality of the law just referred to. The first section of the act provides " that in the several cities of the state, the officers and men employed by municipal authority in the police department of any city, shall severally hold their respective offices and continue in their respective employment as such municipal officers and employees during good behavior, efficiency and residence in such city, except where, by statute, the term of office of any such officer and employee is determined and fixed, and does not depend upon the pleasure of any municipal officer, officers or board authorized to make appointment or employment in said departments; and no person shall be removed from office or employment in the police department of any city, or from the police force of any city, for political reasons, or for any other cause than incapacity, misconduct, nonresidence or disobedience of just rules and regulations established, or which may be established, for the police force or police department of such city; provided, that any member of the police force of any city who shall be absent from duty, without just cause, for the term of five days, shall, at the expiration of said five days, cease to be a member of such police force." The second section provides that the municipal authorities of each city, whose duty it is or may be to provide for, regulate or manage a police department in the city, shall make rules and regulations respecting the department. The third and fourth prescribe the qualifications of policemen in the cities. The fifth provides that no person, whether officer or employee, in the police department of any city, shall be removed from office or employment therein, except for just cause, as provided in the first section, and then only after charge and trial, as provided for in the fifth section.

It will have been seen that the law is, by its terms, confined in its operation to the policemen of cities. Inasmuch as many municipalities, such as towns and boroughs, also employ policemen, and have what may be called police departments, the act cannot be held to be general, seeing that it deals with only part of the body of official persons known as policemen, unless it be upon the assumption that policemen in cities, because of .their greater number and different situation, have, as bodies, different requirements from those of policemen in towns and boroughs, which requirements are sufficiently marked to constitute policemen in cities a proper class for separate legislation.

But apart from this objection, it seems to me quite clear that the act is in contravention of that provision of the constitution which prohibits the passing of private, local or special laws regulating the internal affairs of towns and counties. That by the first clause of its first section it affects the internal affairs of certain cities only, is obvious. Such are the terms of that clause. It applies, not to all cities indiscriminately, but only to those in which the terms of office of policemen depend upon the pleasure of the appointing power. The object of the act is manifestly to deprive the appointing power in those cities of the power which they possessed, at the passage of the act, of removing policemen at will. That this is a regulation of the internal affairs of those cities, is too obvious for remark.

But it is argued that the cities in which the policemen hold office at will constitute, by reason of the peculiarity of such tenure of office, a class for legislation, so far as the subject of the tenure of office of such policemen is concerned. A similar proposition was rejected in this court, in *Hammer* v. *State*, 15 *Vroom* 667. In that case this court condemned as unconstitutional a law which provided that in any city in this state where a board of assessment and revision of taxes existed at the passage of the act, the board should thereafter consist of four members, resident electors of the city, to be chosen in a certain way designated in the act, and that in all cities where

boards of assessment and revision of taxes existed at the passage of the act, the terms of office of the members of the board should terminate upon the appointment of their successors, who, it was provided by the act, should be appointed immediately after the passage of the act. It was held that the law was in contravention of the constitutional prohibition above mentioned. The law, in fact, originally, because of a provision limiting its operation to cities of a certain population, applied to but one city, but it was general in its terms. It was subsequently so amended, by striking out that restriction, that it extended to three cities. It was held that the fact that in those cities taxes were assessed by the machinery of a board of assessment and revision did not constitute them a class for separate legislation ; and although the legislation in question was aimed at the boards and sought, not to abolish them, but merely to reduce the number of members, to change the mode of appointment and extend the term of office, it was adjudged to be unconstitutional. The act dealt with the tenure of office alone. It was said, in that case, that to justify separate legislation for towns and counties there must be something in the subject matter of the enactment to call forth and necessitate such legislation, and that there must be a substantial difference to warrant it. There would seem to be much more reason for sustaining that legislation than for sustaining the law now under consideration. There the legislation was in reference to the boards, and it reached all boards of the same character. Here the legislation is in reference, not to all policemen in cities, but only to those who do not hold office for terms fixed by statute—part, only, of a class. If the fact that certain cities have boards of assessment and revision of taxes, while others have not, does not constitute the former a class for legislative interference with their internal affairs, even in reference to such boards, how can it be said that the fact that in certain cities their policemen hold office at will, instead of for a fixed term, as the policemen in other cities do, constitutes the former cities a class for separate legislation ? If a law should provide that in all cities in which the policemen hold

their offices at will the taxes shall be assessed by a board of assessment to be appointed by the mayor, it would at once be said that such legislation cannot be maintained, because it is based upon false classification.

The fact that some policemen hold office at will no more constitutes them a class for separate legislation than would the circumstance that they receive their pay monthly while other policemen receive theirs quarter-yearly. While policemen in general constitute a class for legislation, the differences in the tenure of their office do not create legitimate classes for separate legislation. The legislature cannot say to one city, "Inasmuch as your policemen hold their offices for terms fixed by statute, we will deal with them as a class, and change the tenure of their office, and provide that they shall hold only at the will of the common council," and to another city, "Inasmuch as your policemen hold at will, we will, dealing with them as a class, provide that they shall hold their offices for life." In either case the legislation would be a special interference with the internal affairs of the city. And yet that is precisely what is done by the law in question. The legislature may say that all policemen, (and perhaps all policemen in cities,) shall hold their offices by the same or like tenure. If the distinction in tenure of office constitutes legitimate ground for separate legislation in reference to the police force in cities, it would do so, also, in reference to other municipal officers. The difference in the tenure of office of mayors and aldermen and other city officials would, upon the same reasoning, constitute classes for separate legislation in respect to such offices. The only difference between such legislation and the old method of special legislation would be that under the old system the legislation might have been directed to the individual case, while under the new it must be directed to the so-called class. In the opinion of the Supreme Court in this case, the classification was held to be a false one, but it was held that part of the first section, (the first clause,) might be disregarded, and the rest be sustained as constitutional, on the ground that it provides that no person

shall be removed from office or employment in the police department of any city for political reasons, or for any other cause than incapacity, misconduct, &c., and therefore is a general provision in regard to removals. But inasmuch as the effect of that provision is to declare that in cities where the policemen hold office at will they shall not be removed without cause, it is difficult to see why the provision is not clearly special legislation interfering with the internal affairs of the cities in which the policemen hold office at will. The legislature cannot constitutionally do by indirection that which it cannot constitutionally do directly. A law which should declare that in every city whose charter provides that the mayor shall hold office for one year only, (in some cities the mayor holds for a longer term,) the mayor shall not be removed from office except for cause, would be as clearly a special law as if it should provide that the term of office of the mayor should be extended so that the incumbent should hold during good behavior. The legislature, by the act under consideration, has substantially provided that such policemen as before the passage of the act held office at will shall hold during good behavior, efficiency, and residence in the city, but that those who hold for terms fixed by statute shall still hold for such terms and no longer; for the legislation affects, and is designed to affect, the former only. Nor can the legislation be sustained upon the ground that it was necessary or proper, in order to secure uniformity of tenure of policemen; for it does not do that, and was not intended to effect that end. Instead of the difference of tenure which existed before the act was passed, which was that some policemen held at will while others held for fixed terms, the difference now is that some hold for fixed terms while others hold during good behavior, &c. It is as important to guard against violation of the constitutional prohibition, when effected by means of legislative provisions which, though seemingly of a general character, are, in fact, special in their operation, as it is to guard against false and illusory classifications to the same end. Special legislation upon forbidden

Cumberland Mutual Fire Ins. Co. v. Giltinan.

subjects, effected by means of ingeniously devised prohibitory provisions, is obviously just as objectionable, under the constitution, as direct and open legislation to the same end would be. The effect and operation of the legislation must be regarded in testing such laws; the form is a matter of minor consideration. If the legislature may, by either method, effect the forbidden purpose, the constitutional prohibition will be of but little avail. This law is based upon a false classification, in order to effect an illegitimate purpose. It should be condemned in every respect in which it violates the constitutional prohibition, whatever may be the means which it provides to accomplish the object.

I am of opinion that the judgment of the Supreme Court should be reversed.

*For affirmance*—THE CHIEF JUSTICE, DIXON, KNAPP, MAGIE, PARKER, VAN SYCKEL, COLE—7.

*For reversal*—THE CHANCELLOR, BROWN, CLEMENT, MCGREGOR, PATERSON, WHITAKER—6.