FREDERIC L. HULME, PROSECUTOR, v. BOARD OF COMMISSIONERS OF TRENTON, RESPONDENT.

Submitted July 1, 1920—Decided October 19, 1920.

Chapter 160 of the laws of 1920 is constitutional legislation : 1. The title sufficiently indicates the object of the statute. 2. Legislation as to retirement and pensions for firemen and for policemen have a proper relation to each other. 3. The legislature may enact that legislation as to the retirement and pensions of policemen and firemen shall take effect at once in municipalities already having a pension fund for firemen or a pension fund for policemen and shall not take effect until after a favorable vote at an election in other municipalities.

On *certiorari.*

Before Justices SWAYZE and BLACK.

For the prosecutor, *Charles E. Bird* and *Aaron V. Dawes.*

For the respondent, *Henry Hartman.*

For the State Firemen's Association, *Pierre P. Garven* and *John F. Drewen, Jr.*

The opinion of the court was delivered by

SWAYZE, J.   The question is the constitutionality of the act of 1920 for the pensioning of policemen and firemen. *Pamph. L., p.* 324.   The act is assailed on the ground that its object is not expressed in the title, because incongruous subjects are included, and because it is special.   The title in so many words indicates that the object of the act is to provide for the retirement of policemen and firemen in municipalities, including police officers having supervision or regulation of traffic on county roads, and to provide a pension for such retired policemen and firemen and members of the police and fire department and widows and dependents of deceased members of said departments.   As nearly as we can understand the objection is that the act was really meant to apply only to certain cities and to compel in those cities retirement at sixty-five years of age.   We fail to see any reason why the legislature might not include all municipalities within the scope of the act and embrace all in the title.

Prior to the decision in *Herman & Grace* v. *Freeholders of Essex,* 71 *N. J. Eq.* 541; affirmed on opinion, 73 *Id.* 415, it might perhaps have been said that traffic policemen on county roads were not embraced in a title which purports to provide for the retirement and pensioning of policemen and firemen in municipalities.   We see no reason why the definition of the word "municipality" should not have the same scope in the present statute as in the statute then under review.   The same definition was adopted in *Union Stone Co.* v. *Freeholders of Hudson,* 71 *Id.* 657; *Burtis* v. *Haines,* 91 *N. J. L.* 4; *Murphy* v. *Freeholders of Hudson, Id.* 40.

There is nothing in the title to limit the application of the act·and the object is plainly pointed out.   Possibly, it is arguable that the retirement and pensioning of policemen has no proper relation to the retirement and pensioning of firemen, but we are not to set aside acts of the legislature on nice distinctions of rhetoric and logic.   The constitutional provision was meant to prevent the concealment of the real object of the act and what is commonly called log-rolling.   The incongruity of the object of a statute in its application to the

o

facts must depend on the existing state of the law just as the
Court of Errors and Appeals has held that the object ex-
pressed in the title must give notice of the effect of the legis-
lation to one conversant with the existing state of the law
(*Sawter* v. *Shoenthal*, 83 *N. J. L.* 499, 501, 502), and we
may add existing customs of the people, and habits, so to
speak, of the language.  In this view it cannot be denied
that policemen and firemen have long been coupled as public
servants sufficiently alike to justify legislation for both to-
gether.  The practice goes back certainly as far as the Civil
Service act of 1885 (*Comp. Stat.*, *p.* 2341), and we do not
know that its propriety has ever been questioned.  The reason
is that policemen and firemen alike have to do with the pro-
tection of the public and are engaged in occupations always of
some and often of great hazard to themselves.  The same may
be said of officers and employes of the health service, but the
risk they run while it may be as great is not as conspicuous
and their place in the public service is a matter of more recent
growth.  Moreover, the similarity of the work of policemen
and firemen is such that the legislature might properly think
it desirable to make their reward similar in order that the
two careers might offer equal inducements.  We do not mean
to say that it would be incongruous to include men in the
health service in such an act as this, or even to include all
public servants in a general pension act.  The justification of
including policemen and firemen is to be found in the legis-
lative practice of more than thirty years, as exhibited in the
Compiled Statutes, under the head of "Fire and Police."
The title clearly indicates the object of the act, and the things
intermixed in the act have a proper relation to each other.

The act is also assailed as special legislation.  One phase
of this objection has already been disposed of.  The particular
point of the present objection is that the act takes effect im-
mediately in every municipality in which a fund for the re-
tirement or pensioning of policemen or firemen, or either, is
now in effect, but does not take effect in any other munici-
pality until adopted by the voters at an election.  This objec-
tion is not tenable under *Lohan* v. *Thompson*, 88 *N. J. L.* 40,

so far as the distinction arises out of the statutory provision for a referendum. The requirement of a referendum where there is no present provision for a pension fund is justified by the consideration that where there is already such a provision, the people may well be supposed to have adopted the principle and there is no need of a further vote; where there is already no such provision the legislature might well think that the people should have the same chance to adopt or reject the principle as the others have already had.

The new element presented by this statute is that it goes into effect without a referendum as to policemen if there is a firemen's pension fund in the municipality, and as to firemen if there is a policemen's pension fund, and it may be argued with some force that if the voters are to have a choice, they should have it at least in cases where the people have not already indicated their approval of the principle of compulsory retirement and a pension. The answer is, that the legislature, for the reasons we have already stated, may well think uniformity in the treatment of firemen and policemen may be desirable, and one step in that direction is to provide for retirement and a pension for both policemen and firemen where existing legislation provides for only one.

The examination of the case has suggested to us another difficulty. The act applies to traffic policemen upon county roads. If there are traffic policemen on other than county roads, or if there are policemen on county roads other than traffic policemen, we should have greater difficulty in defending the generality of the legislation. There is no proof that such is the fact and our attention is not called to any statute providing for such policemen. One must speak with hesitation on a matter relating to the legislation as to roads, but our own examination of the statutes shows no statutory provision except that authorizing traffic policemen on county roads in first-class counties. *Pamph. L.* 1911, *p.* 583; *Supp. to Comp. Stat., p.* 1377. As far as appears in this case, the act of 1920 legislates for all.

The *certiorari* should be dismissed, with costs.