145 N.J. Super. 466 (1976)
368 A.2d 381
GOLDIE TRAINOR, GEORGE W. FITZSIMMONS, PATSY GALANTE, LOIS N. KAUDER AND ANN RYAN, INDIVIDUALLY AND AS REPRESENTATIVES OF THE CLASS OF ALL OTHER PERSONS SIMILARLY SITUATED, PLAINTIFFS-RESPONDENTS,
v.
CITY OF NEWARK, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 1976.
Decided November 30, 1976.
*469 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Salvatore Perillo argued the cause for appellant (Mr. Milton A. Buck, attorney).
Mr. Albert G. Besser argued the cause for respondents (Messrs. Hannoch, Weisman, Stern & Besser, attorneys).
Mr. John Cervase argued the cause for intervenor Veterans Civic League.
The opinion of the court was delivered by HORN, J.A.D.
This is the third challenge to the validity of Revised Ordinance 2:14-1 of the City of Newark[1] which *470 generally requires all of its officers and employees to reside within the city limits as a condition for appointment and for continued employment. The Chancery Division, in an opinion reported at 137 N.J. Super. 570 (1975), declared the ordinance to be unconstitutional.[2] The city then appealed.
The ordinance survived the first two attacks almost unscathed. The initial assault was leveled in Kennedy v. Newark, 29 N.J. 178 (1959), by 15 nonresident employees essentially on three grounds, one of which was that the city was estopped to enforce the ordinance because of an alleged policy of nonenforcement. We need not be concerned with the other two, since they are not involved in the present appeal.
The second unsuccessful attempt to overturn the ordinance came in Abrahams v. Civil Service Comm'n, 65 N.J. 61 (1974).[3] This action was bottomed primarily on the assertion that the requirement of continued residence within the city limits was in violation of the Federal Constitution protecting the right of travel, as interpreted in Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). As already indicated, this attack was likewise repulsed by the city.
The opinion of the trial judge in the case at bar includes a recital of the entire provisions of the subject ordinance. However, special attention is called to the portions thereof which authorize certain municipal officials, "for good cause *471 shown," to permit employees to reside outside the city limits where their health or the nature of their employment necessitates or requires such exceptions. The ordinance also provided for employees being excused by said officials where "special circumstances exist justifying residence outside of the city limits." Abrahams, supra, declared the "special circumstances" exception to be void for lack of any guiding standard.
The trial judge declared the ordinance to be totally unconstitutional as in violation of the Equal Protection Clause of the Fourteenth Amendment, using the following language:
It is therefore concluded that the denial of equal protection found to result from the statutory exemption for police and firemen (N.J.S.A. 40A:14-122.1 and N.J.S.A. 40A:14-9.1, respectively) from the Newark Residency Ordinance is singly and collectively compounded by the pattern of selective enforcement implicit in the city's (1) studied policy of nonenforcement which has prevailed throughout the history of the ordinance; (2) its continued refusal to attempt enforcement of the requirement against employees of its municipal agencies; (3) its continued refusal to attempt enforcement against its officials and their assistants enumerated in N.J.S.A. 40A:9-1; (4) its continuing practice of hiring nonresidents, and (5) by exercising its claimed power to suspend the requirement under standards no less arbitrary than are expressed as "intelligent allowances for unusual cases" despite the invalidation by our highest court of the "special circumstances" exception for reasons of vagueness.
Both Kennedy and Abrahams, supra, affirmed the power of a municipality to require public employees to be residents. Judge Conford, for the court in Abrahams, (65 N.J. at 72) said: "There are any number of conceivable rational warrants in municipal public policy to justify vetoing the desire of the municipal employee to live outside the city while working for it." He then quoted from Ector v. City of Torrance, 10 Cal. 3d 129, 109 Cal. Rptr. 849, 852, 514 P.2d 433, 436 (D. Ct. App. 1974), cert. den. 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974), which listed the following reasons:
*472 Among the governmental purposes cited in these decisions or now urged by amici curiae are the promotion of ethnic balance in the community; reduction in high unemployment rates of inner-city minority groups; improvement of relations between such groups and city employees; enhancement of the quality of employee performance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations; and the general economic benefits flowing from local expenditure of employees' salaries. [65 N.J. at 72]
The Equal Protection Clause does not prohibit mere inequality or difference in treatment. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). And a classification must be upheld under any reasonable set of facts unless there is a showing of invidious discrimination. Morey v. Doud, 354 U.S. 457, 463, 77 S.Ct. 1344, 1 L.Ed.2d 1485, 1490 (1957); Kenny v. Byrne, 144 N.J. Super. 243 (App. Div. 1976). Concomitant with the presumption of validity of enactments, including ordinances, is a presumption that the classification contained therein in its relationship to other enactments is reasonable and valid. Dandridge and Morey, both supra; Lindsley v. Natural Carbonic Gas Company, 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369, 377 (1910).
If a classification has some "reasonable basis," it does not offend the Constitution simply because it is not made with mathematical nicety or because in practice it results in some inequality. Lindsley, supra. "The problems of government are practical ones and may justify, if they do not require, rough accommodations  illogical, it may be, and unscientific." Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 69-70, 33 S.Ct. 441, 443, 57 L.Ed. 730, 734 (1913). If any state of facts reasonably may be conceived to justify it, a statutory discrimination will not be set aside. McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed. 2d 393, 399 (1961).
The trial judge found that notwithstanding the foregoing principles, the distinction in classifications between those *473 employed by the city who were residents and those employed by the city who were nonresidents did not rest on some ground of difference having a fair and substantial relation to the object of the ordinance. Dandridge v. Williams and McGowan v. Maryland, both supra. We disagree with that finding.

I

THE STATUTORY EXCEPTIONS
As stated in the trial judge's opinion, excluding employees[4] of the autonomous agencies such as the parking and housing authorities, library, museum and board of education, the city is served by 10,677 employees, of whom 1,884 are nonresidents. Of the latter number, 1,408 (or 75%) of the 1,884 nonresidents are exempted from the residency requirement by reason of the police and firemen's statutory exemptions and under the city's interpretation of N.J.S.A. 40A:9-1.[5] Contrary to the city's belief as to the effect of the statute, the trial judge interpreted it to mean that the Legislature intended no interference with the city's right to regulate the residence of the officers named in § 9-1. The judge concluded that no sound basis existed for treating policemen, firemen and § 9-1 employees differently from other employees.
Policemen and firemen are considered to be "officers," so that before the enactment of the policemen's and firemen's statutes in 1972 they were required to be residents. Mercadante v. Paterson, 111 N.J. Super. 35, 38 (Ch. Div. 1970), *474 aff'd 58 N.J. 112 (1971). Irrespective of the subject ordinance, N.J.S.A. 40A:9-1 required all officers of municipalities to be residents except those specifically mentioned. See also, Kennedy, supra, 29 N.J. 186. The policemen's and firemen's statutes as well as § 9-1 are presumed to be constitutional. Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381, 388 (1959); In re Freygang, 46 N.J. Super. 14, 27-28 (App. Div. 1957), aff'd 25 N.J. 357 (1957). Cf. Mandelbaum v. Civil Service Dept., 142 N.J. Super. 323 (App. Div. 1976).
"Officers", as distinguished from other employees, have traditionally been recognized as a separate statutory classification including many individuals having "characteristics sufficiently marked and distinguished to make them a class by themselves, having regard to the object of the legislation." Fitzgerald v. New Brunswick, 47 N.J.L. 479, 482 (Sup. Ct. 1885), aff'd 48 N.J.L. 457 (E. & A. 1886); Smith v. Newark, 128 N.J. Super. 417 (Law Div. 1974), rev'd and remanded, 136 N.J. Super. 107 (App. Div. 1975). See also, N.J.S.A. 40:11-22; 43:16A-1 et seq.; 40:47-11.1 et seq. Such treatment has been consistently upheld by the courts. Passaic v. Consolidated Policemen's and Firemen's Pension Fund Comm'n, 18 N.J. 137 (1955); New Jersey State Police Benevolent Ass'n v. Irvington, 121 N.J. Super. 321 (App. Div. 1972).
Policemen and firemen, and those mentioned in N.J.S.A. 40A:9-1, presumptively constitute a class rationally distinguishable from other employees. Policemen and firemen are required to perform duties which concern the very safety of persons and property. The requirements as to policemen and firemen appear to be stricter, more exacting and more concerned with the health, welfare and safety of the municipal population and others. Cf. Hulme v. Board of Comm'rs, 95 N.J.L. 30, 32 (Sup. Ct. 1920), aff'd 95 N.J.L. 545 (E. & A. 1920). It may be said that the duties of those enumerated in § 9-1 are also quite distinguishable from those of other employees. We are not obliged to accept *475 the trial court's private view to the contrary. Cf. Kennedy, supra, 29 N.J. at 185; Kozesnik v. Montgomery Tp., 24 N.J. 154, 167 (1967). We recognize that there are cases which uphold a municipal requirement of residency for policemen and firemen alone, McCarthy v. Philadelphia Civil Service Comm'n, 424 U.S. 645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976); Detroit Police Officers' Ass'n v. Detroit, 385 Mich. 519, 190 N.W. 2d 97 (Sup. Ct. 1971), app. dism., 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972). These cases furnish additional support for the view as to the special attributes of policemen and firemen as a class, and the policy of courts to refrain from interfering with measures in furtherance of attempts by governmental entities to cope with their individual problems. Cf. Kennedy, supra.
As support for his finding that the statutory exceptions were not based on rational classifications, the trial judge referred to testimony indicating pressure groups were responsible for the enactment of the policemen's and firemen's statutes. That there was pressure brought to bear may be true, but the external influences which may have prompted the enactments cannot substantially detract from the normal presumptions which attend them. On the other hand, in the Statement to Senate Bill 452, annexed by the Senate Judiciary Committee, it is reported that "[t]here has been a residency requirement for municipal policemen and firemen for many years. The law has become increasingly difficult to enforce, and it has made the recruitment of new employees more difficult." The Statement also recites that that bill and its predecessor, Senate 326, were being adopted "in the interest of having a uniform law and helping municipalities solve their recruitment problems."
Senate 452, which was adopted as chapter 3 of the Laws of 1972, provides that if a resident and nonresident achieve the same final score in the entrance test for a position or a test for a promotion, then the resident shall be preferred. N.J.S.A. 40A:14-9.3 to 9.6 and 40A:14-122.3 to 122.6. A companion bill, Senate 453, was adopted at the same time, *476 providing for mutual aid and assistance agreements among municipalities for fire and police protection in certain cases. N.J.S.A. 40A:14-26, 156.
As already indicated, municipal officers, except for the enumerated exceptions, are required to be residents by virtue of N.J.S.A. 40A:9-1. As far as officers are concerned, the ordinance is superfluous. It was remarked in Kennedy, supra, that
* * * [i]nsofar as it would authorize permission to officers to live outside the city, the ordinance does conflict with the peremptory mandate of the cited statutes. But the fact that an ordinance may be invalid in some of its applications will not vitiate the measure when it is clear that the legislating body would want it to prevail where legally it may. [29 N.J. at 187; citations omitted]
We need not dwell on the thesis expounded below that a difference exists between the police and firemen's statutes and N.J.S.A. 40A:9-1 in that the city could have insisted under the language of the latter statute that those who were expressly excepted should be residents. In the absence of an adjudication to the contrary we cannot ascribe to the governing body or its officers a studied intent not to enforce the ordinance. Moreover, only 15 of the city's 10,677 employees fall within this category. See Abrahams, supra, 65 N.J. at 64, where the court stated: "The 1970 enforcement effort in the Newark Law Department did not extend to the lawyer-employees because of the provisions of the statutory predecessor of N.J.S.A. 40A:9-1."
These classifications were created by the Legislature and carry the rebuttable presumption of reasonableness. The statement attached to Assembly Bill 1423 (which later became L. 1974, c. 84, § 1, amending N.J.S.A. 40A:9-1), reads:
This bill is designed to open up the pool of qualified persons who may lawfully assume the office of assessors. Many municipalities found themselves unable to fill a vacancy with a qualified person residing therein. This bill will afford an opportunity to fill a vacancy with a qualified person.
*477 Eliminating firemen and policemen and those officers enumerated in § 9-1 from the 1,884 nonresidents, there are left 476 out of the total of 10,677, or approximately 4-1/2% of the direct employees of the city who are nonresidents.
We desire to emphasize that we do not pass on the validity of N.J.S.A. 40A:14-9.1 and 40A:14-122.1, the policeman and fireman exemption statutes, because that question is not properly before us for decision. As already stated, the Newark ordinance does not exempt police and fire department members from residency requirements  state law does. While there may even be doubt as to the rational basis for the validity of the two mentioned statutes, this case was not tried under that theory and those directly affected are not parties to this action. The record before us is inadequate for any consideration of the question. Cf. Abrahams v. Civil Service Comm'n, supra, 65 N.J. at 76 (Clifford, J., concurring).

II

EMPLOYEES OF MUNICIPAL AGENCIES
We do not agree that the failure of defendant to attempt to secure court determination that the employees of the various autonomous agencies indicates a policy in favor of discrimination. The cases referred to by the trial judge, Jersey City Housing Auth. v. Civil Service, 87 N.J. Super. 146 (App. Div. 1965); Dept. of Civil Service Dep't, v. Newark, 131 N.J. Super. 275, 278 (App. Div. 1974), and DeVita v. Paterson Housing Auth., 17 N.J. 350, 360 (1955), do not in fact support a conclusion that employees of such agencies may be considered as employees of the municipality for purposes of the residency ordinance. Each of the agencies is a separate independent agency, a body corporate and politic which is created by the governing body of a municipality or county. Tumulty v. Jersey City, 57 N.J. Super. 503 (App. Div. 1959); English v. Newark Housing Auth., 138 N.J. Super. 425 (App. Div. 1976). Employees of *478 these agencies are not recruited, hired, promoted or fired by the city. The city should not be charged with failing to do something as an arbitrary and studied intentional failure when it is far from legally clear that there is any obligation or responsibility on its part with respect to employees of such agencies. It may also be added that such employees constitute a reasonable and rational class of employees separate and apart from those working directly for the city.

III

FAILURE TO ENFORCE THE ORDINANCE UNIFORMLY
The trial court concluded that there was a designed discriminatory intention on the part of the municipal administration "by exercising its claimed power to suspend the requirement under standards no less arbitrary than are expressed as `intelligent allowances for unusual cases' * * *." It is conceivable that the ordinance exceptions, except as dependent on "special circumstances," are entirely reasonable in their application as well as their purpose. We find no foundation for the use of those clauses excepting certain of the employees as indicative of discrimination. Moreover, even as to those employees permitted to be nonresidents for "special circumstances," determined before Abrahams, supra, declared that clause to be invalid, there should be no deduction of intentional undue discrimination. To hold otherwise is tantamount to imposing a presumption of wrongdoing when the opposite presumption exists with respect to actions of municipal officers. Cf. N.J. Chapt., Am. I.P. v. N.J. State Bd. of Prof. Planners, 48 N. J 581, 609 (1967), cert den. 389 U.S. 8, 88 S.Ct. 70, 19 L.Ed.2d 8 (1967). We disagree with the trial judge's conclusion that the evidence shows a "studied policy of nonenforcement." We have reviewed the evidence concerning the alleged lack of conformity in the light of the principles hereinbefore enunciated and find *479 a lack of credible evidence to support the conclusion reached by the trial judge.
Of the 476 nonresidents who did not come within the police or firemen or N.J.S.A. 40A:9-1 categories, there were some whose employment applications showed no evidence of nonresidency; some who were excused from the residency requirement by department heads because of one of the reasons stated in the ordinance; some who were hired as residents and became nonresidents later, and some who initially concealed their nonresident status. Of the 15 who testified for plaintiffs, seven were residents when hired and moved away years later, five were given "special circumstances" exceptions, and two (a social caseworker and a sanitary inspector) were in classified service and were hired as nonresidents after all resident applicants had been hired.
The foregoing is illustrative of the conclusion reached by us  that of the 476 nonresident employees comparatively few of the total work force can be found to have been placed on the payroll of the city with utter disregard of the ordinance, as is suggested by plaintiffs. In any event, the number of nonresidents is proportionally too minimal to warrant a finding that there was a studied discriminatory design.

IV

CONCLUSION
Finally, we return to Kennedy and Abrahams, both cited above. In the former the court said:
* * * Ordinances are not repealed by inaction. * * * And it is difficult to conceive of a general estoppel to enforce a regulatory measure merely because of a general failure to compel compliance. * * * [29 N.J. at 191]
Abrahams made it quite clear that
The general rule is that a municipality is not precluded or estopped from enforcing an ordinance merely because certain persons have *480 been permitted to violate it without prosecution. 56 Am. Jur.2d, Municipal Corporations (1971), § 421, p. 460; and see Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)." [65 N.J. at 75]
Also,
"Needless to say, our holding in this regard will be no excuse for continued non-enforcement of the ordinance in the future if in fact that has been the case in the past. There are both civil and criminal sanctions for willful nonfeasance in office." [65 N.J. at 75-76]
Cf. State v. Donovan, 132 N.J.L. 319 (Sup. Ct. 1945).
For the foregoing reasons, finding as we do that the trial judge erred in declaring the ordinance to be unconstitutional, the judgment of the Chancery Division is
Reversed.
NOTES
[1] The ordinance was first enacted in 1932. In 1951 the city adopted a revision which incorporated the ordinance.
[2] The Attorney General has notified the court that he is familiar with this appeal and the constitutional issues raised therein, and that his office had made a decision not to move for intervention.
[3] Plaintiff Abrahams was an employee working in the Newark Law Department as a secretary since 1966. Though she was a resident of Union County when she applied for and received the position, she had given a Newark address. In 1967 she moved to Newark, and back to Union in 1970. When she failed to return to Newark after notification to all department personnel by corporation counsel, she was dismissed. Her appeal was from the Civil Service Commission decision upholding the dismissal.
[4] "Employees" as used here and sometimes in other contexts herein include all persons in the service of the city, whether classified as officers or otherwise.
[5] This statute, paraphrased, is as follows: Except in the case of counsel, attorney, engineer, health officer, auditor, comptroller, appointed tax collector, elected tenured and appointed tax assessors or members of boards of assessors, every person holding a municipal office shall reside therein.