IN THE MATTER OF CHARLES A. LEARY.

Superior Court of New Jersey
Appellate Division

Submitted September 15, 1981—Decided September 28, 1981.

Before Judges MATTHEWS, PRESSLER and PETRELLA.

*Frank P. Trocino,* City Attorney, for appellant City of Elizabeth Police Department (*Raymond T. Bolanowski* on the brief).

*James R. Zazzali,* Attorney General of New Jersey, attorney for respondent Civil Service Commission (*John J. Degnan,* former Attorney General of New Jersey; *Andrea M. Silkowitz,* Deputy Attorney General, of counsel; *Janet Share Zatz,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

PRESSLER, J. A. D.

The issue raised by this appeal involves the construction of *N.J.S.A.* 40A:14–123.1a(a), the most recent legislative effort to accommodate the competing interests involved in police residency requirements. The specific problem before us is to determine the operative date of residency which, in a police department subject to Civil Service, will qualify an application for the appointment preference the statute authorizes.

By way of brief historical background, the Legislature had, until 1972, required, subject to stated limited exceptions, that police officers be residents of the municipality by which they were employed as a condition both of initial appointment and continued service. See *N.J.S.A.* 40:47–3 and 40:47–5, repealed in 1971 by *N.J.S.A.* 40A:14–176 and readopted as, respectively, *N.J.S.A.* 40A:14–122 and 40A:14–128. *See, also, generally,* as to the pre-1972 law, *Kennedy v. Newark,* 29 *N.J.* 178 (1959); *Mercadante v. Paterson,* 111 *N.J.Super.* 35 (Ch. Div. 1970), aff'd o. b. 58 *N.J.* 112 (1971). *Cf. Abrahams v. Civil Service Comm.,* 65 *N.J.* 61 (1974). And see Comment, 28 *Rutg. L. Rev.* 428 (1975).

In 1971 and 1972 the Legislature significantly altered its longstanding commitment to municipal residency requirements for police officers by the adoption of two pieces of legislation, *L.* 1971, *c.* 443 and *L.* 1972, *c.* 3, both effective in February 1972. The first of these, by §§ 4 and 5, respectively, deleted the local residency condition for initial appointment theretofore required by *N.J.S.A.* 40A:14–122 and the continued residency require-ment theretofore required by *N.J.S.A.* 40A:14–128. The second of these acts, codified in relevant part as *N.J.S.A.* 40A:14–9.1 to 9.7, inclusive, and 40A:14–122.1 to 122.8, inclusive, constituted a more comprehensive approach to the residency situation. The essential scheme of the 1972 legislation was to maintain the 1971 decision to eliminate residency as a requirement for both ap-pointment and continued service. *N.J.S.A.* 40A:14–9.1 and 9.7; *N.J.S.A.* 40A:14–122.1 and 122.7. The Legislature did, neverthe-less, respond in a limited manner to the municipal perception of the desirability of service on the local police force by residents. The nature of this response was the creation of an appointment and promotional preference for residents having the identical qualifications as nonresidents. Identical qualification was, moreover, defined as the same average score on entrance and promotional tests in communities governed by Civil Service, and in those communities not under Civil Service which nevertheless, use merit testing for entry and promotion. See *N.J.S.A.* 40A:14–9.3 to 9.6, inclusive, and *N.J.S.A.* 40A:14–122.3 to 122.6, inclusive. *See, generally, Trainor v. Newark,* 145 *N.J.Super.* 466, 473–477 (App.Div.1976), supplemental opinion 148 *N.J.Su-per.* 434 (App.Div.1977), certif. den. 74 *N.J.* 255 (1977).

Evidently regarding the limited preference for appointment of residents afforded by the 1972 act as inadequately accommo-dating the legitimate concerns of the appointing municipality, the Legislature substantially expanded the scope of that prefer-ence by its 1976 adoption of *N.J.S.A.* 40A:14–123.1a, the statute here in controversy. The general plan of the statute is to eliminate any promotional preference based on residency but to permit municipalities to classify applicants' initial appointment

to police officer positions into four preference classes and to make its appointments from among the eligible candidates of each higher preference class before having to consider the eligible candidates within the next lower preference class. The classes, in order of preference, are municipal residents, other residents of the county, other residents of the State, and all others. The specific provision of *N.J.S.A.* 40A:14–123.1a(a) is as follows:

In any municipality of this State, before any person shall be appointed as a member of the police department and force, the appointing authority may classify all the duly qualified applicants for the position or positions to be filled in the following classes:

I. Residents of the municipality.

II. Other residents of the county in which the municipality is situate.

III. Other residents of the State.

IV. All other qualified applicants.

Within each such classification duly qualified applicants who are veterans shall be accorded all such veterans' preferences as are provided by law. Persons discharged from the service within 6 months prior to making application to such municipality, who fulfill the requirements of *N.J.S.* 40A:14–10.1, and who, thereby, are entitled to appointment notwithstanding their failure to meet the New Jersey residency requirement at the time of their initial application, shall be placed in Class III.

Subsection (b) of the statute goes on to provide that

In any municipality which classifies qualified applicants pursuant to subsection a. of this section, the appointing authority shall first appoint all those in Class I and then those in each succeeding class in the order above listed, and shall appoint a person or persons in any such class only to a vacancy or vacancies remaining after all qualified applicants in the preceding class or classes have been appointed or have declined an offer of appointment.

With respect to municipalities governed by Civil Service, subsection (c) of the statute provides as follows:

In any such municipality operating under the provisions of Title II of the Revised Statutes, the classes of qualified applicants defined in subsection a. of this section shall be considered as separate and successive lists of eligibles, and the Civil Service Commission shall, when requested to certify eligibles for positions specified in this section, make such certifications from said classes separately and successively, and shall certify no persons from any such class until all persons in the preceding class or classes have been appointed or have declined offers of appointment.

The narrow but novel and important question projected by this appeal is whether an applicant for appointment to a munici-

pal police force governed by Civil Service is entitled to Class I preference if he was a resident of the municipality on the closing date of the entrance examination but moved out of the municipality prior to the date of his appointment. The Civil Service Commission answered this question affirmatively, and we agree.

The factual context in which the issue arises is at this point undisputed. Charles Leary was a long-time resident of the City of Elizabeth, whose police department is governed by Civil Service. An examination for the position of police officer was announced subject to a June 23, 1977 closing date and limited to city residents. That limitation was apparently based on the expectation that a sufficient number of city residents would respond to the announcement and would consequently qualify for appointment as to make unnecessary the city's resort to any of the lower three preference classes. It is undisputed that on the closing date Leary was still an Elizabeth resident, and being otherwise qualified, was admitted to the examination. Some two years later, in July 1979, the Civil Service Commission placed his name on its certified list of eligibles for appointment to the position. Leary was 25th on a list of 75 eligibles from which the lowest to be appointed was 54th. Leary's failure to receive an appointment was predicated on the city's request to the Civil Service Department that he be decertified because subsequent to the examination and prior to appointment he had moved to a neighboring municipality. The city's request was denied by the Director of the Division of Local Government Services, who found that while Leary had in fact terminated his residence in that interim period, nevertheless, his residency status for purposes of the Class I preference of the statute was fixed by his residence in the city on the closing date of the examination. The Civil Service Commission, on the city's appeal from the Director's determination, confirmed his action.

The parties to this appeal agree, and we concur, that the statute itself is not specific in defining the operative residence

date for inclusion within the Class I preference. Nor is any light shed on this issue by the legislative history. See *Statement*, Senate No. 714 (*L.* 1976, *c.* 132). Hence, it appears that the statute is facially both susceptible to the Commission's interpretation, namely residence as of the examination closing date, and to the city's interpretation, namely, residence as of the appointment date. For the reasons hereinafter stated, we opt to follow the Commission's interpretation.

At the outset, it is axiomatic that in resolving issues of legislative interpretation it is the court's obligation to implement the legislative intent as it understands it and that in seeking to determine legislative intent it must give appropriate consideration to the actual verbiage of the enactment, the public policy sought to be advanced thereby and whatever extrinsic aids may be available. *See, e. g., New Jersey Builders, Owners & Managers Ass'n v. Blair*, 60 *N.J.* 330, 338–339 (1972). Addressing ourselves, first, to the statutory language, we are impressed by the fact that had the Legislature intended to limit inclusion in the Class I preference to those in residence on the appointment date, it could easily have done so in unambiguous terms. What it chose to do, however, was to construct its preference scheme on the basis of pre-appointment classification of qualified applicants for the position and then to permit the municipality to make its appointments in accordance with the classification of applicants already made. We infer from this scheme that the Legislature intended that the class be fixed as of the date of the making of the classification, thus rendering a subsequent change of residence inconsequential *vis-à-vis* the right to remain in the class.

It does not appear to us, despite the city's contrary claim, that this reading of the statute contravenes the legislative purpose of the enactment. The Legislature, as we have noted, has expressly mandated that once a local police officer has been appointed to the police force, he is under no compulsion to remain in residence in the community he serves. What the Legislature

has thus done is to permit a municipality to give appointment preference to those who have a residential nexus with it before active service as a police officer is commenced. We appreciate the municipal interest in preferring that there be such a nexus. We do not, however, perceive any material difference in respect of that interest whether that nexus is fixed as of the actual appointment date or as of the necessarily earlier date on which the potential appointee has been classified as a duly qualified and resident applicant.

We are, moreover, persuaded that the Commission's interpretation of the statute, and particularly subsection (c) thereof, above quoted, which is within the Commission's administrative and enforcement authority, is entitled to considerable deference from us. *See, e. g., Peper v. Princeton Univ. Board of Trustees,* 77 *N.J..* 55, 69–70 (1979); *In re Saddle River Application,* 71 *N.J.* 14, 24 (1976). As the determinations of both the Director and the Commission make clear, an applicant is regarded by the Department as duly qualified and eligible for Class I preference if he is otherwise qualified and meets the residency requirement for preference as of the date of the closing of the examination. If he sits for the examination as a member of that Class, he will be routinely certified on the list of eligibles if his examination performance otherwise warrants, and his name may not be removed from that list by reason of a subsequent but pre-appointment change of residency.

The Commission clearly views this procedure, which it has derived from its interpretation of the statute, as best calculated to serve the legislative intent, the municipal interest in retaining some degree of pre-service residential nexus and its own interest in a certain, impartial and administratively convenient method of compliance with the responsibilities reposed in it by the statute. We see nothing in the legislative verbiage, history or policy of this statute which would compel us to conclude otherwise.

The determination of the Civil Service Commission is affirmed.