IN THE MATTER OF CHARLES A. LEARY.

Argued May 3, 1982—Decided July 20, 1982.

*John R. Weigel,* Special Counsel, argued the cause for appellant City of Elizabeth Police Department (*Frank P. Trocino,* City Attorney, attorney).

*Janet Share Zatz,* Deputy Attorney General, argued the cause for respondent Civil Service Commission (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Erminie L. Conley,* former Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

O'HERN, J.

The sole issue in this case is whether municipal residency, for purposes of receiving preference in initial police officer hiring,

should be determined at the closing date for the Civil Service examination or the actual appointment date.

The Civil Service Commission and the Appellate Division held that the relevant date was the closing date for the examination. We hold that it is the date of appointment.

*N.J.S.A.* 40A:14–123.1a permits municipalities to grant preference to residents in initial appointments of police officers. The City of Elizabeth announced an examination for the position of police officer in the city with a June 23, 1977 closing date for the filing of applications. The examination was limited to Elizabeth residents because the city believed that it had a sufficient pool of candidates within its boundaries. Charles Leary was then a city resident and was admitted to the examination. Two years later, in July 1979, the city was advised by the Civil Service Commission that Leary's name was on the certification of eligibles for appointment to the position of police officer. The city claimed that Leary was not a resident and requested that his name be removed from the certification on the grounds that he failed to meet the residency requirement. Leary appealed to the Department of Civil Service for review of the city's decision to remove his name from the eligible list. The Director of the Division of Local Government Services denied the city's request, stating that "[a] candidate is considered to have satisfied the residency requirement if he was a resident as of the closing date and may not have his or her name removed due to a subsequent move from the jurisdiction." The Commission upheld the Director on appeal. The city appealed the Commission's decision to the Appellate Division, where it did not challenge the Commission's finding of fact that Leary was a resident of Elizabeth as of the closing date for filing of applications. The city's only contention was that to meet the residency requirement of the statute a candidate must be a resident of the city as of the date of appointment and not merely as of the closing date for the filing of applications.

The Appellate Division affirmed the determination of the Commission. It concluded that "[t]he Legislature intended that

the class be fixed as of the date of the making of the classification, thus rendering a subsequent change of residence inconsequential vis-a-vis the right to remain in the class." It reasoned that the statute was ambiguous, that there was no material difference with respect to the interest of the municipality either at the date of classification or the date of appointment, and that the Commission's interpretation of the statute was entitled to deference. We granted the city's petition for certification. 89 *N.J.* 387 (1981).

## I.

The interests of local government in preferring residents for public employment have been repeatedly sustained by courts against constitutional challenge. In *Kennedy v. City of Newark,* 29 *N.J.* 178 (1959), Chief Justice Weintraub upheld the Newark city ordinance requiring residence of all of its officers and employees as a condition for continued employment, stating "[g]overnment may well conclude that residence will supply a stake or incentive for better performance in office or employment. . . ." 29 *N.J.* at 184. *See McCarthy v. Philadelphia Civil Service Comm.,* 424 *U.S.* 645, 96 *S.Ct.* 1154, 47 *L.Ed.*2d 366 (1976) (upholding Philadelphia ordinance requiring city employees to be city residents); *Detroit Police Officers Ass'n v. Detroit,* 385 *Mich.* 519, 190 *N.W.*2d 97 (1971), appeal dismissed for lack of substantial federal question, 405 *U.S.* 950, 92 *S.Ct.* 1173, 31 *L.Ed.* 2d 227 (1972) (upholding residency requirement for police officers); *Abrahams v. Civil Service Comm.,* 65 *N.J.* 61 (1974) (upholding residency requirement for Newark city employees). *See also United Bldg. & Constr. Trades Council v. Camden,* 88 *N.J.* 317 (1982) (upholding Camden ordinance setting goals for employment of residents in public works projects).

Until 1972 the Legislature had required, subject only to limited exceptions, that police officers reside in the municipality where they sought employment for two years preceding their appointments and continue to live in the municipality during their terms of office. In *Krzewinski v. Kugler,* 338 *F.Supp.* 492

(1972), a three-judge panel upheld such residency requirements against challenge by police officials that the requirements infringed upon their constitutional rights. The court outlined the governmental interest in avoiding the risks of police isolation from the needs, morals and customs of the community. It further emphasized that off-duty contacts between police and the people encourage mutual feelings of respect and commitment, citing the President's Commission on Law Enforcement and the Administration of Justice, Task Force Report, The Police (1967) and the Governor's Select Committee on Civil Disorders, State of New Jersey, Report for Action, 163–64 (1968).

Although residency requirements were thus found to be valid, the statutory requirements of initial and continued residence for police service were repealed in 1972. The essential scheme of the new legislation was to allow as the only preference the choice of a resident who had achieved the same score as a nonresident on the relevant Civil Service exam or merit test. *See N.J.S.A.* 40A:14–122.3 (repealed). A similar limited preference was provided for promotions. *N.J.S.A.* 40A:14–122.4.

The Appellate Division described the most recent amendment as follows:

> Evidently regarding the limited preference for appointment of residents afforded by the 1972 act as inadequately accommodating the legitimate concerns of the appointing municipality, the Legislature substantially expanded the scope of that preference by its 1976 adoption of *N.J.S.A.* 40A:14–123.1a, the statute here in controversy. The general plan of the statute is to eliminate any promotional preference based on residency but to permit municipalities to classify applicants' initial appointment to police officer positions into four preference classes and to make its appointments from among the eligible candidates of each higher preference class before having to consider the eligible candidates within the next lower preference class. The classes, in order of preference, are municipal residents, other residents of the county, other residents of the State, and all others. [180 *N.J.Super.* 557 at 559–60].

In accordance with the provisions of the statute, the City of Elizabeth adopted an ordinance mandating that all future appointments of qualified applicants to the police department be hired in the order of residency preference permitted by the statute. When the demand by qualified municipal residents

exceeds the supply of available positions, the statute and ordinance in effect impose a residency requirement for initial appointment. With this background we approach the issue of statutory construction.

## II.

As noted, *N.J.S.A.* 40A:14–123.1a permits residents of a municipality to receive preference in appointment to positions in the police department. Subsection (a) of the statute provides in part for the classification of applicants in four categories, according to residency:

a. In any municipality of this State, before any person shall be appointed as a member of the police department and force, the appointing authority may classify all the duly qualified applicants for the position or positions to be filled in the following classes:

I. Residents of the municipality.

II. Other residents of the county in which the municipality is situate.

III. Other residents of the State.

IV. All other qualified applicants.

Subsection (c) provides that in any municipality operating under the Civil Service Law, the classes defined in subsection (a) shall be considered as "separate and successive lists of eligibles," and that no persons from any class shall be certified for appointment "until all persons in the preceding class or classes have been appointed or have declined offers of appointment." Subsection (d) of the statute makes it clear that it applies only to initial appointments. Durational residency is not required.

We construe statutes in accordance with the ordinary meaning or plain understanding of their words. *Service Armament Co. v. Hyland,* 70 *N.J.* 550, 556 (1976). The plain meaning of this statute is that municipalities may give preference in appointment to their residents. It belabors the language of the statute to conclude that the Legislature intended to qualify that grant by limiting municipalities' choice of eligibility dates. As noted by the Appellate Division, *N.J.S.A.* 40A–14–123.1a represents "the most recent legislative effort to accommodate the competing interests involved in police residency requirements." 180 *N.J.Super.* at 558.

The City of Elizabeth argues strongly that the residential connection is an important element in developing a police force that can adequately cope with the social and economic needs of its older urban population. To the maximum extent permitted by law, it wants its new police officers to have that intimate knowledge of the city and its people that comes only from a local residency. It urges that the city will thus have the best opportunity to constitute the police officer that it wants, a police force nourished by young Elizabeth residents who know the city and are personally committed to it and its future in the way that only residency can attest.

In determining whether residence was equated with domicile under prior law, Justice Mountain, then sitting in the Superior Court, stressed that in fostering the public interest to be promoted by residency requirements "no casual residence was intended but rather a real and principal residence, in short domicile. Nothing less will create that 'identity' with the community." *Mercadante v. City of Paterson,* 111 *N.J.Super.* 35, 40 (Ch.Div.1970), aff'd, 58 *N.J.* 112 (1971).

■ It is not for us to determine the merits of these competing policies nor to evaluate the relative gain the city will achieve by having residency determined at the latest date, even though the officer can move the day after appointment. In this case we do well to follow the admonition of our constitutional mandate that grants of powers to municipalities be liberally construed in favor of the local governments. *N.J.Const.* (1947), Art. IV, § VII, par. 11.

■ We are not persuaded that the Civil Service Commission's interpretation of the statute should be dispositive. If there had been a practical administrative construction of the statute over a period of years without interference by the Legislature, that would be evidence of its conformity with legislative intent and would be entitled to great weight. *Automatic Merchandising Council v. Glaser,* 127 *N.J.Super.* 413, 420 (App.Div.1974); *accord, Malone v. Fender,* 80 *N.J.* 129 (1979); *Public Service Elec.*

*& Gas Co. v. Woodbridge Tp.,* 73 *N.J.* 474 (1977). Suffice it to observe here that the Civil Service Commission's position in this case, first taken in *In the Matter of Kenneth Peterson* (M2302, decided January 1980) marked an abrupt change in its interpretation of the residency requirement. As late as June 1978, a Commission official advised one Elizabeth resident that until the date of appointment he must maintain an Elizabeth residency in order to be considered a bona fide resident of the city.

Nor does the internal structure of the statute convince us that the examination date is the decisive one. See *Body-Rite Repair Company, Inc. v. Director, Division of Taxation,* 89 *N.J.* 540 (1982). The Civil Service Commission must initially classify applicants in accordance with their residency at the date of closing the exam. But as a practical matter the municipal interest in examining the list of eligibles to verify residence will not ripen until it is advised that the candidates have in fact passed the test. For although it is the Civil Service Commission that makes up the list on the basis of mutual declarations of residence, the statute provides that "*the appointing authority may classify*" the qualified applicants in order of residence. *N.J.S.A.* 40A:14–123.1a (emphasis added). Finally, the statutes on congruent subjects cited by appellant do not call for a different result. See *N.J.S.A.* 40A:14–123.1 (permitting nonresident veterans to be considered eligible as residents at time of application, provided they sign a notice of intention to become a State resident within six months from date of appointment); *N.J. S.A.* 40A:9–1.4 (authorizing local units to limit eligibility for positions in the classified service other than fire and police to residents "at the time of closing date"). The former deals with the question of required *State* residency. The latter specifically authorizes the closing of the examination to nonresidents if the local unit limits employment to residents.

The question is not without debate, but given the legislative history of the provisions, the constitutional mandate in favor of local government and the public policy to be furthered by residency requirements we uphold the city's interpretation of

the statute to allow it to require residency at the time of appointment. Nothing in the statute or in this opinion would prevent a municipality from determining residency on the closing date without requiring that persons moving out of the municipality be deleted from the list. Although the issue is not before us, if a municipality chooses to employ the date of appointment as the determinative date, it would appear to follow, by analogy to *N.J.S.A.* 40A:14–123.1, that one declaring the intention to reside in the municipality would be eligible for the examination. We now hold only that the municipality may, pursuant to the statute, elect to require residency at the date of hiring.

For the reasons stated, the judgment of the Appellate Division is reversed and the matter is remanded to the Civil Service Commission for further proceedings in accordance with this opinion.

*For reversal and remandment*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For affirmance*—None.