272 N.J. Super. 31 (1994)
639 A.2d 333
IN THE MATTER OF THE CITY OF NEWARK, APPELLANT,
v.
PBA LOCAL 3, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 1994.
Decided March 16, 1994.
*32 Before Judges COLEMAN, MUIR, Jr., and THOMAS.
Michelle Hollar-Gregory, Corporation Counsel, attorney for appellant (Phillip Dowdell, Assistant Corporation Counsel, on the brief).
Zazzali, Zazzali, Fagella & Nowak, attorney for respondent (Paul L. Kleinbaum, of counsel; Tanya Pushnack Friedman, on the brief).
Robert B. Anderson, General Counsel, New Jersey Public Employment Relations Commission, attorney for respondent New Jersey Public Employment Relations Commission; Don Horowitz, Deputy General Counsel, on the brief).
The opinion of the court was delivered by COLEMAN, P.J.A.D.
This case revisits Newark's attempt to enforce its municipal residency ordinance respecting civilian employees. The issue is whether a residency requirement is mandatorily negotiable. Newark appeals a final decision of the Public Employment Relations Commission (PERC) holding that the City's Preliminary Notices of Disciplinary Actions against three civilian employees in the Police Department, based on violations of the residency ordinance, *33 constitutes an unfair labor practice. We disagree and reverse. The residency requirement is preempted from collective negotiations.

I
At the center of the controversy are three persons employed by the Newark Police Department as identification and records officers (I.D.). They are Jesse Barr, employed March 27, 1978; Gary F. Williams, employed December 27, 1978; and Robert G. Payne, employed July 2, 1985. All of them resided in Newark at the commencement of their employment. They are not graduates of the Police Academy. Their job description defines them as civilian employees who take fingerprints and photographs of arrestees, maintain arrest records and assist with investigation procedures within the police department.
I.D. officers are represented by the Patrolmen's Benevolent Association (PBA) Local 3, but they have been separated from the police officers' collective negotiation unit since 1978. Payne moved out of Newark in 1987, and he notified both the Police and the Personnel Departments of his change of residence. Barr moved from the City at some unspecified time. He, too, said he filed a change of address card. The record does not reflect when Williams moved from the City.
On February 25, 1991, the Newark Police Department served Preliminary Notices of Disciplinary Action against the three I.D. officers seeking to terminate their employment because they were no longer residing in Newark. Before a hearing could be conducted on the application, the PBA Local 3 filed an unfair labor practice charge against the City, alleging a violation of the New Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-5.4(a)(1) and (5). The complaint alleged the City had unilaterally applied a residency ordinance to I.D. officers.
A hearing examiner ruled in favor of the PBA Local 3. He found the City had violated the Act by not negotiating with the PBA Local 3 over the imposition of a residency requirement upon *34 I.D. officers. PERC agreed with the hearing examiner and ordered the City to (1) rescind the disciplinary actions; (2) negotiate with the PBA Local 3 before applying the residency requirement, and (3) notify the Chairman of PERC within 20 days what action the City had taken to implement the order. This appeal followed.
On this appeal, the City argues its residency law was validly established pursuant to enabling legislation which has not been abrogated by subsequent legislation. Consequently, its ordinance preempts any right to collective negotiations of residency requirement for I.D. officers.

II
Newark's Residency Ordinance was first adopted in 1932 and revised in 1951; neither controls this appeal. Kennedy v. City of Newark, 29 N.J. 178, 182-83, 148 A.2d 473 (1959). Following the 1951 amendment, the ordinance granted the Director of any department the discretionary authority "for good cause shown" to exempt an employee or officer from the continued residency requirement where "Special circumstances attach permitting residence outside the City limits." Abrahams v. Civil Service Comm'n, 65 N.J. 61, 73-74, 319 A.2d 483 (1974), declared the "special circumstances" exception void for lack of adequate standard to guide the Director's discretion. The City's Residence Ordinance (R.O.) 2:14-1 was amended on November 2, 1976, the circumstances surrounding that amendment will be discussed later. The "special circumstances" exemption was changed to read "Special Talent or technique which is necessary for the operation of government not found among Newark residents exists justifying residence outside of the City limits."
By the time of the 1976 amendment to R.O. 2:14-1, the ordinance had withstood one constitutional attack, Abrahams, supra, 65 N.J. at 75, 319 A.2d 483; it withstood another attack based on selective enforcement or nonenforcement, Kennedy, supra, 29 N.J. at 191, 148 A.2d 473. A second constitutional attack was pending *35 at the time of the 1976 change. That pending decision was rendered November 30, 1976 in Trainor v. City of Newark, 145 N.J. Super. 466, 472, 368 A.2d 381 (App.Div. 1976), certif. denied, 74 N.J. 255, 377 A.2d 661; supplemented, 148 N.J. Super. 434, 372 A.2d 1132 (1977), again upholding the constitutionality of the residency ordinance.
In view of the substantial litigation seeking to void the residency requirement, a public referendum was held on November 2, 1976. The majority of voters decided to make the residency requirement for employment prospective from November 2, 1976. In addition, the voters approved the language to replace the "special circumstances" exemption voided by Abrahams. Thus, the effect of the referendum was to grandfather in all of the nonresident officers and employees of the City as of November 2, 1976. As a consequence of the referendum and the amended residency ordinance, all officers and employees hired after November 2, 1976, not exempted by law, are subject to the residency ordinance. Since the 1976 amendment, the ordinance has withstood yet another constitutional attack. Booth v. Township of Winslow, 193 N.J. Super. 637, 640, 475 A.2d 644 (App.Div.), certif. denied, 97 N.J. 657, 483 A.2d 179 (1984), cert. denied sub nom., Winslow Tp. v. Booth, 469 U.S. 1107, 105 S.Ct. 781, 83 L.Ed.2d 776 (1985). Also, see generally, In re Leary, 91 N.J. 151, 154, 450 A.2d 504 (1982).
The Newark Ordinance, R.O. 2:14-1, involved in the present case provides:[1]
All officers and employees of the city who shall hereafter become employees of the city are hereby required as a condition of their continued employment to have their place of abode in the city and to be bona fide residents therein, except as otherwise provided by the charter....
The director of any department or the mayor or city clerk is hereby authorized in his discretion, for good cause shown, to permit any officer or employee of the *36 city in his respective department or office to remain in the employ of the city without complying with the provisions hereof, where:
(a) The health of any officer or employee necessitated residence outside of the city limits;
(b) The nature of the employment is such as to require residence outside of the city limits;
(c) Special talent or technique which is necessary for the operation of government not found among Newark residents exists justifying residence outside of the city limits.
Failure of any officer or employee to comply with this section shall be cause for his removal or discharge from the city service.

III
We agree with the City that the finding made by PERC that the City did not intend to apply the residency requirement to I.D. and Records officers prior to 1990, could not reasonably have been based on the credible evidence in the record. Close v. Kordulak Bros., 44 N.J. 589, 599, 210 A.2d 753 (1965); Goyden v. State Judiciary, 256 N.J. Super. 438, 446, 607 A.2d 651 (App.Div. 1991), aff'd o.b., 128 N.J. 54, 607 A.2d 622 (1992). Barr and Payne testified that after they became employed by the City, they were unaware that they were required to remain residents. They thought they were entitled to the same exemption granted police officers, by virtue of N.J.S.A. 40A:14-122.1, but no one ever made that representation to either of them. John D'Auria, the City's Personnel Director, testified that the City's policy and procedural manual did not state the city's residency requirement. That prompted him to circulate a memo on July 25, 1988, explaining the policy. The memo was sent to department directors. Thomas De Maio, the Chief Identification officer, testified that he was the person to enforce the residency requirement for I.D. officers, but he had not been told that I.D. officers were required to continue residing in the City. He stated that he did not receive D'Auria's memorandum. He thought I.D. officers were treated the same as police officers. Although there was testimony that I.D. officers were required to sign affidavits of residence at the time of hiring and at the same time acknowledge notice of required continued *37 residency in the City, no such signed affidavit was produced for Barr, Payne or Williams.
Until 1972, the City's residency ordinance required even police officers and firemen to reside in the City at the time of appointment and thereafter. This was changed by L. 1972, c. 3, effective February 15, 1972, which was codified at N.J.S.A. 40A:122.1 and N.J.S.A. 40A:14-9.1 respectively. This new law invalidated that portion of the City's residency ordinance which was in existence on February 15, 1972 respecting continued residency of police officers and firemen. See N.J.S.A. 40A:14-122.1 and 9.1. But the residency requirement continued unabated for all who were not exempted from its requirement either by statute or the ordinance. Despite the I.D. officers' contentions to the contrary, they were not exempt because they do not satisfy the definition of "police officer" defined in N.J.S.A. 43:16A-1(2)(a).
PERC determined that although the City had a valid and enforceable residency ordinance which covered I.D. officers since at least 1976, the City had not enforced the ordinance against I.D. officers between 1976 and 1990. Because of the alleged lack of enforcement and the I.D. officers' belief that they were being treated the same as police officers, PERC found "the City had an obligation to negotiate with the PBA before applying a residency requirement to I.D. officers." PERC explained in a footnote that its decision is based on its finding that at the time the residency requirement was established, it was not intended to apply to I.D. officers.
The three individuals knew they were not police officers. They also knew they were employed by the City after November 1976 and therefore had no reason to believe they could be grandfathered in by the referendum. Neither inquired of the Department of Personnel whether continued residence was a requirement of their employment. Beginning in 1978, before Barr, Payne and Williams became employed as I.D. officers, I.D. officers were no longer members of the same collective negotiations unit as the police officers. The collective negotiation agreements were silent *38 on residency requirements. The belief that I.D. officers should be treated as police officers was at best, only a wish on the part of I.D. officers which never became a reality.
In addition, a chart contained in the City's appendix discloses that after the 1976 referendum, twelve I.D. officers, including Barr, Payne and Williams, were hired by the City. Only three of them were hired after the Director of Personnel's memorandum of July 25, 1988. All I.D. officers except Barr, Payne and Williams continued to reside in the City after that memorandum was circulated. The chart also indicates that disciplinary proceedings were initiated against all of the I.D. officers not in compliance with the residency ordinance. It turns out that Barr, Payne and Williams were the only I.D. officers not residing in the City when the disciplinary actions were commenced. Beyond that, it is well established that there is no "general estoppel to enforce a regulatory measure [such as Newark's residency ordinance] merely because of a general failure to compel compliance." Kennedy, supra, 29 N.J. at 191, 148 A.2d 473. Similarly, ordinances "are not repealed by inaction." Ibid. Here, there is no evidence of a lack of enforcement.

IV
Since we find no absence of intent and no estoppel to enforce the ordinance against I.D. officers, we must now decide whether the issue of residency is negotiable. A matter is not negotiable in the public sector, even if it affects the working conditions of public employees, if "set by statutes or regulations." State v. State Supervisory Employees Ass'n, 78 N.J. 54, 79-80, 393 A.2d 233 (1978); Rutgers v. Council of AAUP Chapters, 256 N.J. Super. 104, 115, 606 A.2d 822 (App.Div. 1992), aff'd o.b., 131 N.J. 118, 618 A.2d 853 (1993). This is so because once a matter has been resolved by statute, rule or regulation, public officials cannot bargain away or abdicate those matters in his or her capacity as an employer. Ibid; State v. Supervisory Employees Ass'n, 78 N.J. at 79-80, 393 A.2d 233. Once the matter has been *39 settled by statute, rule or regulation, negotiation is not permitted because it would significantly interfere with the exercise of inherent management prerogative. The rational basis and public policy reasons supporting Newark's residency ordinance have been explicated in Abrahams v. Civil Service Comm'n, supra, 65 N.J. at 68-73, 319 A.2d 483 and Kennedy v. City of Newark, supra, 29 N.J. at 183-187, 148 A.2d 473.
We recognize that terms and conditions of public employment regulated by statute, rule or regulation, which do not speak in the imperative, "but rather permit a public employer to exercise a certain measure of discretion, have only a limited preemptive effect on collective negotiation and agreement." State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 81, 393 A.2d 233. Even then, negotiation is permitted only with respect to the limited area of discretion which we do not have in this case. Ibid; Council of N.J. State College Locals v. State Bd. of Higher Educ., 91 N.J. 18, 32, 449 A.2d 1244 (1982); Council of N.J. State College Locals v. State, 251 N.J. Super. 577, 586-87, 598 A.2d 1237 (App. Div. 1991). Here, the ordinance speaks in the imperative when it directs that "[a]ll officers and employees of the city who shall hereafter become employees of the city are hereby required as a condition of their continued employment to have their place of abode in the city and to be bona fide residents therein...." Consequently, negotiation respecting residency as a term or condition of employment which has been fixed by ordinance would be illegal. Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 141, 393 A.2d 267 (1978).
When the latest amendment to the City's residency ordinance occurred in 1976, N.J.S.A. 11:22-7, one of the authorizing statutes, was in effect. That statute was not repealed until the L. 1986, c. 112, codified at N.J.S.A. 11A:12-3, effective September 25, 1986. Under N.J.S.A. 11:22-7, the Civil Service Commission mandatorily limited eligibility of applicants for municipal employment to qualified residents of that municipality. It's successor, N.J.S.A. 11A:4-3, gives the Commission, now the Department of *40 Personnel, N.J.S.A. 11A:2-1, the discretion to permit nonresident applicants to be eligible for the examination. But the repeal of N.J.S.A. 11:22-7 does not "militate against continued power in [the] local government to promulgate regulations which relate, not to fitness for specific work, but rather to the furtherance of the common good, conceived here to repose in continued residence within municipal borders...." Kennedy, supra, 29 N.J. at 190, 148 A.2d 473. Apart from that, a provision in the Act Concerning Residence Requirements for Municipal and County Employees enacted in 1978, also directs that the provisions of this Act shall not "alter, abrogate, repeal or otherwise affect any residency requirement in effect in any local unit by ordinance or resolution." N.J.S.A. 40A:9-1.9.
We hold that in view of Newark's residency ordinance, the subject matter of preemployment and continued employment residency is not negotiable. The matter of residency was preempted by R.O. 2:14-1. See Matter of N.J. Transit Bus Operations, Inc., 125 N.J. 41, 44, 592 A.2d 547 (1991); State v. State Supervisory Employees Ass'n, supra, 78 N.J. at 67, 80-82, 393 A.2d 233.[2]
The final determination of PERC is reversed. The matter is remanded to conduct the departmental disciplinary hearing previously restrained by PERC. Before conducting the hearing, however, the three I.D. officers shall be permitted to submit an application for exemption under R.O. 2:14-1. Such an application has not been made by either Barr, Payne or Williams. Each application must be submitted to the proper person contemplated *41 by the ordinance within thirty days of this decision. We do not retain jurisdiction.
Reversed and remanded for further proceedings.
NOTES
[1] Newark adopted the Mayor-Council Plan C of the Optional Municipal Charter Law, N.J.S.A. 40:69A-55 to 60. Wagner v. Newark, 24 N.J. 467, 476, 132 A.2d 794 (1957). The reference to "charter" in the ordinance identifies the plan of government.
[2] We wish to emphasize that we express no view on the broader question whether restrictive residential ordinances of this type would be enforceable, if adopted, in other municipalities. This decision has no influence upon disparate impact discrimination cases filed under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2, as amended in 1991. See Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); Newark Branch, NAACP v. Town of Harrison, 940 F.2d 792 (3d Cir.1991).